IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DILLAN NEWBOLD**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 4:18-cv-01572-HEA |
| **CITY OF SAINT LOUIS, MISSOURI**, et al. | ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS OR STRIKE**

On September 17, 2017, Plaintiff, a student at Washington University School of Medicine, arrived in downtown St. Louis in an attempt to join protests. (ECF No. 33, ¶¶ 127, 129). When Plaintiff arrived, the protests were over, but he saw a group of bicycle officers with the St. Louis Metropolitan Police Department (SLMPD) herding pedestrians toward the intersection of Washington Ave. and Tucker Blvd. (*Id*. at ¶¶ 130-31, 133). Plaintiff did not hear any police warnings or orders to disperse, at this point or at any point during the night. (*Id*. at ¶ 137). Three lines of riot police sealed off all of paths of egress and marched inward, beating batons in unison and preventing Plaintiff from leaving the kettle. (*Id*. at ¶ 138). Fearing violent police action, Plaintiff donned eye protection. (*Id*. at ¶ 139). Plaintiff immediately complied with all orders; he did not resist at any point. (*Id*. at ¶¶ 140-141, 145). Plaintiff used his phone to film the surrounding activities for approximately ten seconds, but an officer told Plaintiff to "Put your damn phone away," and immediately pepper sprayed Plaintiff's face. (*Id*. at ¶¶ 142-143). One officer pulled off Plaintiff's eye protection while another pepper sprayed Plaintiff directly in the face again. (*Id*. at ¶¶ 146-147). Once cuffed, Plaintiff experienced intense pain in his wrists and hands before his hands numbed. (*Id*. at ¶ 154). He was subsequently diagnosed with neuralgia and neuropraxia and did not recover full sensation in his right hand for nearly two months. (*Id*. at ¶¶ 167-168).

Defendant Gerald Leyshock, the incident commander during the events of September 17, 2017, approved the plan to restrict the movements of individuals who were attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present. (ECF No. 33, ¶¶ 10, 47, 57). Defendant Timothy Sachs, who was in direct command and responsible for deploying tactical units (*id.* at ¶ 48), testified under oath that he and Defendant Leyshock decided to effectuate a mass arrest at Washington and Tucker, where Plaintiff was located (ECF No. 33 Exhibit E at 70). Defendant Sachs's own testimony states that he developed the plan to amass police officers in such a manner that citizens would be unable to exit and that Defendant Leyshock approved that plan. (*Id.*) Defendants Scott Boyher, Randy Jemerson, Matthew Karnowski, and Brian Rossomanno were all physically present at the illegal kettling location and were responsible for directing the officers under their command. (ECF No. 33, ¶¶ 11, 13-15, 52, 55, 58, 67, 82, 93, 102, 119, 126, 192-193). Defendants Boyher and Karnowski directed the officers under their command to use force against the peacefully assembled individuals. (*Id.* at ¶ 82). Defendant Rossomanno was responsible for giving the vague dispersal order that was used as the questionable basis for the illegal arrests of peaceful citizens and was within arms-length of SLMPD officers as they pepper sprayed and beat compliant citizens but did nothing to intervene. (*Id.* at ¶¶ 50-53, 93, 119). Further, Defendant Terrence Ruffin and John Does #1-5, unidentified police officers with the SLMPD, prevented Plaintiff from leaving the area, pepper sprayed him, and unlawfully arrested him. (*Id.* at ¶¶ 16-17). The named and John Doe officers are collectively referred to as "Defendant Officers."

## ARGUMENT

Plaintiff's Second Amended Complaint (hereinafter "Complaint") contains sufficient factual allegations to "raise a right to relief above the speculative level" for each count and as to each Defendant. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). A plaintiff is only required to plead enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

I.   **Plaintiff Sufficiently Pled a Plausible Claim for Municipal Liability under *Monell*.**

A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law." *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978). A municipality has "custom liability" under *Monell* when the plaintiff establishes:

>    (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
>    (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
>    (3) The plaintiff['s] injury by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (citations omitted).

The Eighth Circuit has recognized, however, that prior to discovery, a plaintiff "may not be privy to the facts necessary to accurately describe or identify" the policies or customs which caused the deprivation of their constitutional right. *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). Thus, the Court has held a plaintiff is not required to identify the full scope of an alleged custom or policy to survive a motion to dismiss. *Id.* A plaintiff need only include "allegations, reference or language from which one could *begin to draw* an inference that

3

the conduct complained of resulted from an unconstitutional policy or custom." *Teague v. St. Charles Cty.*, 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010) (citing *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (emphasis added).

Further, a municipality is liable under *Monell* for failure to train its employees when its failure evidences a deliberate indifference to its residents' constitutional rights, and the training deficiencies caused the deprivation of the plaintiff's constitutional rights. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). Similarly, a municipality is liable under *Monell* for failure to supervise its employees when its failure evidences a deliberate indifference to or tacit authorization of violations of residents' rights, and the plaintiff's constitutional rights are violated as a result. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (citing *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994)).

While Plaintiff will likely have more specific facts after discovery, the facts in the Complaint state a plausible claim for relief under *Monell*. To begin, the Complaint alleges Defendant City of St. Louis (hereinafter "the City") has a long history of responding with excessive force to protesters who are invoking their First Amendment rights. Specifically, Plaintiff alleges that at least as early as 2014 the City was involved in a minimum of three incidents where SLMPD indiscriminately used chemical agents against protesters without warning, without giving individuals an opportunity to comply with any instructions, without mitigating the impact of the use of chemical agents, and without ensuring a safe means of egress for people attempting to comply with SLMPD instructions. (ECF No. 33, ¶¶ 34-36).

The above actions by the City led a federal judge in the Eastern District of Missouri to enter a temporary restraining order—almost three years *before* the assault on Plaintiff—preventing the City from enforcing any rule, policy, or practice that grants law enforcement officials the authority or discretion to utilize "chemical agents" "for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity." (ECF No. 33, ¶ 36; ECF No. 33,

4

Exhibit B, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014)).

Plaintiff's Complaint also refers to and includes the subsequent settlement agreement entered into by the City relating to use of force on protesters as an exhibit. (ECF No. 33, ¶ 38). In that settlement agreement, the City agreed to remedy the violations outlined in the temporary restraining order. (ECF No. 33, Exhibit C, Settlement Agreement in *Templeton v. Dotson*, No. 4:14-cv-02019, at *1-2 (E.D. Mo. Mar. 25, 2015)). The City agreed to not enforce any rule, policy, or practice that grants law enforcement officials the authority or discretion to use chemical agents for the purpose of dispersing groups of individuals engaged in non-criminal activities or "for the purpose of frightening them or punishing them for exercising their constitutional rights." (ECF No. 33, ¶ 38; ECF No. 33, Exhibit C at 1-2).

Further, the complaint alleges that less than two months after entering into the consent decree, SLMPD began to violate its terms by indiscriminately using chemical agents against peaceful, non-criminal protesters without warning. (ECF No. 33, ¶¶ 39-42). This statement is supported in the complaint by transcript testimony from *Ahmad v. St. Louis*, No. 4:17-cv-02455, at 69 (E.D. Mo. Oct. 18, 2017). (ECF No. 33, Exhibit E at 82, 88, 103). The *Ahmad* case arose out of police misconduct from the same week of protests as the one Plaintiff attended. The *Ahmad* court concluded that the plaintiffs were likely to prevail on their claim that the City "has a custom or policy of using chemical agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police in retaliation for the exercise of their first amendment rights." (ECF No. 33, ¶ 125; ECF No. 33, Exhibit I, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017). The activity that led to the Eastern District's conclusion that the City has a custom of unconstitutional misconduct in *Ahmad* is the same activity Plaintiff alleges happened to him on September 17, 2017. (ECF No. 33, ¶¶ 127-169).

5

These facts from the temporary restraining order, settlement agreement, and preliminary injunction provide sufficient evidence to comply with pleading requirements. The facts contained in Plaintiff's Complaint show the City has a policy or practice of using excessive force, chemical agents, and unconstitutional seizures against non-violent citizens exercising their First Amendment Rights. Further, given that SLMPD continued to violate citizens' constitutional rights even after the City was subject to a temporary restraining order – not to mention its voluntary entry into a settlement agreement, it is reasonable for the Court to infer that the City was aware of the need to train, supervise, and discipline its officers regarding these practices. That SLMPD continued to participate in the same unconstitutional activity despite the court order and settlement agreement is evidence of both the City's deliberate indifference to these constitutional violations and its failure to provide adequate training, supervision, and discipline on these issues. As a direct result of the City's failures, Defendant Officers violated Plaintiff's constitutional rights.

Thus, the facts alleged in the Complaint are sufficient to allege the existence of a continuing, widespread, and persistent pattern of unconstitutional misconduct by the City's employees. Plaintiff therefore pleaded sufficient facts to state a plausible claim for *Monell* liability against the City and the motion to dismiss Count IV should be denied.

## II.   Plaintiff Pleaded Sufficient Facts to State Cognizable Claims Against Defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno, in Counts I, II, and XII.

It is well established in the Eighth Circuit that supervisors are liable where they personally participated in a constitutional violation, or when they knew about unconstitutional conduct and facilitated, approved, condoned or turned a blind eye to such conduct. *Wagner v. Jones*, 664 F.3d 259 (8th Cir. 2011) (citing *Ottman v. City of Independence*, Mo., 341 F.3d 751, 761 (8th Cir. 2003) (citations and internal quotes omitted); *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996) (tacit authorization or failure to sufficiently supervise the offending actions of an employee sufficient for supervisor to be liable). Further, a supervisor can be found liable under § 1983 "for

6

deliberate indifference if he is aware of 'a substantial risk of serious harm,' even if he is not aware that the harm has, in fact, occurred." *Kahle v. Leonard,* 477 F.3d 544, 551–52 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, (1994)).

Plaintiff sufficiently pleaded facts that, accepted as true, state claims against Defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno (hereinafter "Defendant Supervisors") for their personal violations of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights, as well as a claim for conspiracy to violate those rights, that are "plausible on [their] face." *Iqbal*, 556 U.S. at 678. Specifically, the complaint alleges that Defendant Leyshock was the incident commander during the events of September 17, 2017 and approved the plan to restrict the movements of individuals who were attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present, which included Plaintiff. (ECF No. 33, ¶¶ 10, 47, 57). Defendant Sachs, who was in direct command and responsible for deploying tactical units, testified under oath that he and Defendant Leyshock decided to effectuate a mass arrest at Washington and Tucker, where Plaintiff was located. (*Id*. at ¶¶ 48, 57; ECF No. 33, Exhibit E at 70). Defendant Sachs's own testimony states that he developed the plan to amass SLMPD officers in such a manner that citizens would be unable to exit and that Defendant Leyshock approved that plan. (ECF No. 33, ¶ 57).

Thus, Defendants Leyshock and Sachs were directly involved in planning and approving the kettling, knowing that it would result in the violation of individuals' First Amendment rights and would likely result in unreasonable arrests without probable cause in violation of the Fourth Amendment. In addition, given that SLMPD had a long history of indiscriminately using chemical agents against protesters without warning, without giving individuals an opportunity to comply with any instructions, without mitigating the impact of the use of chemical agents, and without ensuring a safe means of egress for people attempting to comply with SLMPD instructions, Defendants Leyshock and Sachs should have been aware of a "substantial risk of serious harm"

7

from their orders. (ECF No. 33, ¶¶ 34-37; ECF No. 33, Exhibit C, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014)).

Further, the remaining Defendant Supervisors—Boyher, Jemerson, Karnowski, and Rossomanno—were all physically present at the illegal kettling location and were responsible for implementing the conspiracy to illegally kettle and arrest peaceful protesters. (ECF No. 33, ¶¶ 11, 13-15, 52, 55, 58, 67, 82, 93, 102, 119, 126, 192-193). The Complaint also specifically alleges that Defendant Boyher was in charge of and directed the officers who used their bicycles as battering rams against the protesters, (*id*. at ¶¶ 11, 67, 82, 102); that Defendant Karnowski directed the officers under his command to use force against the peacefully assembled individuals (*id*. at ¶¶ 14, 55, 82, 102); and that Defendant Rossomanno was responsible for giving the vague dispersal order that was used as the basis for the illegal arrests of peaceful citizens and was within arms-length of SLMPD officers as they pepper sprayed and beat compliant citizens (*id*. at ¶¶ 50-53, 93, 102; ECF No. 33, Exhibit F at 5). Defendants themselves admit that the dispersal order was unclear and took place more than an hour before the SLMPD officers kettled, pepper sprayed, and arrested Plaintiff. (*Id*. at ¶ 53).

Nothing Defendants state in the one paragraph of their motion dedicated to this issue contradicts the law or facts outlined above. (ECF No. 36 at 10).  Defendants' claim appears to be that Defendant Supervisors cannot be liable unless they were aware of the illegal behavior directed specifically at Plaintiff and failed to intervene. However, as the Court found in the sole case relied on by Defendants, Plaintiff has not raised a failure to intervene claim. *White v. Jackson,* 865 F.3d 1064, 1081 (8th Cir. 2017) (finding the plaintiff did not raise a failure to intervene claim and, therefore, declining to consider it). Further, the *White* case relied on by Defendants does not apply the test Defendants cite to determine liability of a supervisor. *Id.* Defendants' argument is therefore inapposite and should be rejected by the Court.[1]

---

[1] Defendants also argue incorrectly that Plaintiff has raised a claim based on a theory of *respondeat superior*. (ECF No. 36 at 10). As discussed above, Plaintiff bases Plaintiff's claims on Eighth Circuit case law holding supervisors

Thus, the Complaint sufficiently pleads facts by which the Court can reasonably infer that Defendant Supervisors were all present and either directing or observing the constitutional violations committed by the officers under their command. At the very least, therefore, the Complaint presents sufficient facts that Defendant Supervisors knew about unconstitutional conduct and facilitated, approved, condoned, or turned a blind eye to such conduct. *Wagner*, 664 F.3d at 259. Thus, Defendants' motion to dismiss Counts I, II, and XII should be denied.

### III.  Plaintiff Pleaded Sufficient Facts to State a Plausible Claim for § 1983 Conspiracy.

Defendants argue that Plaintiff does not have a valid § 1983 conspiracy claim because Plaintiff's underlying claims warrant dismissal. (ECF No. 36 at 9-10). This argument fails because Plaintiff stated sufficient facts under Counts I, II, and XII, as detailed above. Moreover, Plaintiff's conspiracy claim is not barred by the intracorporate conspiracy doctrine. The Eighth Circuit has not determined whether the doctrine is even applicable to § 1983 claims. *Powers v. City of Ferguson,* 229 F.Supp.3d 894, 905 (E.D. Mo. 2017). Defendants offer no authority for the application of the intracorporate conspiracy doctrine to § 1983 conspiracy claims and rely solely on case law raising that defense under § 1985.[2] (ECF No. 36 at 8-9).

Courts in this circuit have repeatedly denied motions to dismiss based on the intracorporate conspiracy doctrine in § 1983 cases. *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 897 (E.D. Mo. 2017); *Golden v. Moutray,* 2018 U.S. Dist. LEXIS 62828, at *11 (E.D. Mo. April 13, 2018); *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.,* 2014 U.S. Dist. LEXIS 14568, at *8 (E.D. Mo. Feb. 5, 2014). For example, because the purpose of the intracorporate conspiracy doctrine is to shield corporations from liability for "routine, collaborative business decisions," several courts have held that allegations of police misconduct or excessive force are not protected; finding that

---

responsible where they knew about unconstitutional conduct and facilitated, approved, condoned, or turned a blind eye to such conduct. *Wagner v. Jones*, 664 F.3d 259 (8th Cir. 2011).
[2]  Defendants cite *Cross v. Gen. Motors Corp.*, 721 F.2d 1152 (8th Cir. 1983), *L.L. Nelson Enters., Inc. v. County. of St. Louis, Mo.*, 673 F.3d 799 (8th Cir. 2012), and *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070 (8th Cir. 2016), all conspiracy cases under 42 U.S.C. § 1985.

"conspiracies and cover-ups are not the product of routine police department decisions-making." *Pinell v. City of Gerald, Mo.,* 2018 U.S. Dist. LEXIS 45957, at *24 (E.D. Mo. Mar. 21, 2018); *Howard v. City of Chicago,* 2004 U.S. Dist. LEXIS 21537, at *33-34 (N.D. Ill. Oct. 25, 2004); *Golden,* 2018 U.S. Dist. LEXIS 62828, at *11; *Newsome v. James,* 2000 U.S. Dist. LEXIS 5678, at *46 (N.D. Ill. April 26, 2000).

Further, several courts have held that, because of the standard of review on motions to dismiss, "the interests of justice are not best served by considering the intracorporate conspiracy doctrine at this pre-evidentiary stage" in § 1983 conspiracy cases. *Golden*, 2018 WL 1784395 at *11 (citing *Powers*, 229 F. Supp. 3d 894, 904–05 (E.D. Mo. 2017); *Anzaldua*, 2014 WL 46234, at *8 (aff'd in part, rev'd in part on other grounds and remanded, 793 F.3d 822 (8th Cir. 2015)).

Here, Defendant Officers' behavior involves illegal and unconstitutional actions. As such, Defendant Officers cannot be considered to have been acting within the scope of their employment or conducting routine activities, and the intracorporate conspiracy doctrine does not shield Defendants from liability. Given the early stage of this litigation and the lack of discovery, even if the Court were inclined to consider the applicability of this doctrine to the facts here, the Court should defer such analysis until the summary judgment stage. Thus, Defendants' motion to dismiss Count III should be denied.

**IV.    Plaintiff has Pleaded Sufficient Facts to State Plausible Claims under Missouri Law.**

Because Plaintiff stated plausible claims for relief under federal law, as outlined above, the Court has jurisdiction over Plaintiff's state law claims, Counts V-XI, and XIII of the Complaint.

Defendants do not argue that Plaintiff has not sufficiently pleaded the elements of Plaintiff's state law claims. Instead, Defendants make specific arguments about whether Plaintiff is even entitled to raise certain claims. Defendants first argue that Plaintiff is not entitled to punitive damages against the City for Plaintiff's assault, battery, negligent infliction of emotional distress,

10

and intentional infliction of emotional distress claims. (ECF No. 36 at 11). Plaintiff concedes that Plaintiff is not entitled to punitive damages against the City for these claims, under § 537.610.3 RSMo.

Second, Defendants argue that Plaintiff's claims for negligent infliction of emotional distress and intentional infliction of emotional distress are not actionable because Plaintiff has other claims pleaded, like assault. (ECF No. 36 at 11). Defendants' argument is incorrect, and Defendants misapplied *Brown v. City of Pine Lawn*, No. 4:17CV01542 ERW, 2018 WL 950211, at *6 (E.D. Mo. Feb. 20, 2018). To begin, neither *Brown* nor the cases it cites stand for the proposition that negligent or intentional infliction of emotional distress claims are barred if the same facts would give rise to another tort. (ECF No. 36 at 11). Rather, intentional infliction of emotional distress is "intended to supplement existing forms of recovery" in cases where the sole motivation for the act was to cause emotional distress. *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo. App. 1998) (overruled on other grounds). Because negligent infliction of emotional distress does not have this requirement of "sole motivation," there is no bar to that tort being raised along with claims alleging assault or any other tort. *See Brown*, 2018 WL 950211, at *7. Further, even assuming *arguendo* that some of Plaintiff's other tort claims would bar a finding that Defendant Officers' sole motivation was to cause emotional distress, that does not prevent Plaintiff from raising the claim at the pleading stage. Federal Rule of Civil Procedure 8(d)(3) specifically allows a plaintiff to plead inconsistent claims. At the least, intentional infliction of emotional distress is an alternative theory of recovery and is otherwise properly pleaded.

Third, Defendants argue Plaintiff cannot recover for both assault and battery, citing to *Armoneit v. Ezell*, 59 S.W.3d 628 (Mo. App. 2001). (ECF No. 36 at 11). However, *Armoneit* provides only that every battery includes an assault. *Id.* at 632 (citing *Adler v. Ewing*, 347 S.W.2d 396, 402 (Mo. App. 1961)). Assault and battery are "two distinct causes of action," and Plaintiff cannot intuit whether the jury will find that Plaintiff proved the elements of Plaintiff's battery

11

claim or the lesser claim of assault. *Devitre v. Orthopedic Ctr. of St. Louis*, LLC, 349 S.W.3d 327, 335 (Mo. banc 2011) (quoting *A.R.B. v. Elkin*, 98 S.W.3d 99, 104 (Mo. App. 2003)). Thus, Plaintiff is not required to choose between assault and battery claims at this early stage.

Finally, Defendants' motion to dismiss Plaintiff's state law claims should be denied because Plaintiff's claims are not barred by official or sovereign immunity.

### A. Defendants Officers are Not Entitled to Official Immunity.

Official immunity is only available where the claims relate to discretionary, rather than ministerial acts, and those acts are performed within the scope of the officer's authority. *Southers v. City of Farmington, Mo.*, 263 S.W.3d 603, 610 (Mo. banc 2008); *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002). Here, because Defendant Officers unconstitutionally seized Plaintiff, they were not acting within the scope of their authority and are not entitled to official immunity.

However, even assuming *arguendo* that Defendant Officers were acting within the scope of their authority, official immunity "'does not apply to discretionary acts done in bad faith or with malice.'" *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (quoting *Blue v. Harrah's North Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. App. 2005)). A defendant acts with malice and is not protected by official immunity "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Davis*, 794 F.3d at 1013 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. en banc 1986)). "Bad faith" means "'conscious wrongdoing'" or "'breach of a known duty through some ulterior motive.'" *Id.* The Complaint alleges facts sufficient to show Defendant Officers acted in bad faith or malice. Plaintiff was acting lawfully, yet – without warning and for no reason – Defendant Officers pepper sprayed Plaintiff and arrested him without probable cause. (ECF No. 33, ¶¶ 141-153). An officer of reasonable intelligence would recognize that arresting and consciously or intentionally injuring a law-abiding citizen for exercising his First

12

Amendment rights is a violation of her duties as an officer. Thus, Defendant Officers are not entitled to official immunity, and the motion to dismiss Counts V-XI and XIII should be denied.

### B. The City Waived Sovereign Immunity.

Defendants argue that sovereign immunity bars Counts V-XI and XIII against the City. (ECF No. 36 at 11-13). However, the City waived sovereign immunity. Municipalities waive sovereign immunity by purchasing liability insurance that covers the plaintiff's claim. *State v. Rel. Bd. of Trustees of Cty. Of Kansas Cty. Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. 1992). At the pleading stage, all a plaintiff must do is plead specific facts demonstrating his claim falls within an exception to sovereign immunity. *See Parish v. Novus Equities Co.*, 231 S.W.3d 236, 242 (Mo. Ct. App. 2007) (citing *Hummel v. St. Charles Cty. R–3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo. App. 2003)).

Here, the Complaint alleges the City obtains insurance from or is self-insured through the Public Facilities Protection Corporation (PFPC), a not for profit corporation into which the City pays funds yearly. (ECF No. 33, ¶¶ 212-213). These statements alone, which must be accepted as true, are sufficient to state a plausible claim that the City has waived sovereign immunity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such an inference is supported by the City's own documentation. The City website's accounting page explicitly states the PFPC is the City's self-insurance program.[3] Indeed, City Counselor Julian Bush stated in a January 31, 2018 letter that the PFPC can be "properly thought to be self-insurance." *See* ECF Doc. 65, Exhibits A-D in *Faulk v. City of St. Louis*, No. 4:18-cv-0308-JCH (E.D. Mo. February 27, 2019).[4] Plaintiff pleaded more

---

[3] https://www.stlouis-mo.gov/government/departments/comptroller/services/AccountingServices.cfm (last visited February 27, 2019).

[4] Further, as the City is well aware, the Articles of Incorporation for the PFPC identify the purpose of the corporation as being "to implement a program which will assure the continuing provision of municipal and governmental services by various public facilities and functions in the St. Louis metropolitan area which facilities are placed in jeopardy by escalating costs and exposures to exceed fiscal abilities." (*See* ECF Doc. 65, Exhibits A, p. 1, in *Faulk v. City of St. Louis*, No. 4:18-cv-0308-JCH (E.D. Mo. February 27, 2019). This statement indicates the intent behind incorporating the PFPC was to create an insurance plan or self-insurance plan to cover the costs of judgments issued against the City of St. Louis.

than sufficient facts showing that the City obtains insurance from or is self-insured through the PFPC.[5]

Further, it is likely that more evidence regarding the City's insurance plan will be obtained during discovery. While Defendants are correct that the burden is on Plaintiff to ultimately prove the existence of an insurance plan, the case law relied on by Defendants only applied that requirement at the *summary judgment* stage; after discovery was complete. *St. John's Clinic, Inc. v. Pulaski Cty. Ambulance Dist.,* 422 S.W.3d 469, 471 (Mo. Ct. App. 2014); *Topps v. City of Country Club Hills,* 272 S.W.3d 409, 412 (Mo. Ct. App. 2008). Thus, the motion to dismiss Counts V-XI and XIII should be denied, as the City waived sovereign immunity.

**V.     Plaintiff's Complaint Should Not Be Stricken Under Fed. R. Civ. P. 12(f).**

The Court may strike a pleading, in full or in part, only if it contains "redundant, immaterial, impertinent, or scandalous" matters. Fed. R. Civ. P. 12(f). Here, there are no such grounds to strike the Complaint. Defendants claim that they are unable to determine which counts of the Complaint are alleged against each Defendant due to the length and format of the document. (ECF No. 36 at 2). Each count states whether it is against all defendants or all individual defendants, identifies a legal claim, and includes some of the facts in support of that claim. Any confusion as to who is being sued and for what is disingenuous on the part of Defendants.

Additionally, Defendants argue that paragraphs 37-40 of the Complaint violate Rule 408(a) of the Federal Rules of Evidence, yet Plaintiff has not sought admission of any evidence in this cause. Rather, the Eighth Circuit has recognized that documents attached to or incorporated within a complaint are part of the pleadings and may be considered by the Court when determining whether a plaintiff has stated a plausible claim. *Retro Television Network*, 696 F.3d at 768-69 (8th

---

[5] Defendant attempts to argue that self-insurance does not involve a third party, and, therefore, is not "purchased" for purposes of waiving sovereign immunity. (ECF No. 36 at 13). Notably, Defendants point to no case law supporting this contention. Further, it is unclear from Defendants' argument how providing money to an outside entity in order to receive coverage for liability is not a "purchase," or why the City would choose to create a fund to cover tort liability if it truly believes it cannot be sued for any torts due to sovereign immunity.

14

Cir. 2012) (citing *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010)). Moreover, at the pleading stage Plaintiff is required to make factual allegations that, coupled with any reasonable inferences drawn therefrom, establish a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Paragraph 52 sets forth facts identifying conduct for which some or all Defendants are liable under every count of the Complaint. Paragraphs 19-24, 52, and 116-126 and Exhibits B-E relate to Plaintiff's *Monell* claim against the City and support the reasonable inference that the City has a custom of using excessive force against citizens, which resulted in Plaintiff's injuries.

Paragraphs 19-24, 26-27, and Exhibit A set forth the facts underlying the reasons for the protests at issue in this case. Defendants allege that inclusion of this information contains "inflammatory rhetoric" "casting aspersions on the verdict in *State v. Stockley*," thus making the information impertinent or scandalous. (ECF No. 36 at 2). While it may be inconvenient to Defendants, the fact that a large portion of the St. Louis public disagreed with the court decision can hardly be considered scandalous or inflammatory. Further, the fact that a police officer had just been acquitted for shooting an unarmed black man is hardly immaterial to Defendant Officers' actions towards unarmed citizens protesting that verdict or how that decision may have impacted their use of unconstitutional force. While they cast Defendants in a bad light, the paragraphs and exhibits in dispute are not "redundant, immaterial, impertinent, or scandalous." Rather, they allege facts upon which Plaintiff states claims for relief and should not be stricken under Rule 12.

## CONCLUSION

For the reasons stated above, Plaintiff has pleaded sufficient facts to state claims upon which relief can be granted. Plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss or Strike Plaintiff's Second Amended Complaint in full.

Date: March 29, 2019                    Respectfully submitted,

                                        KHAZAELI WYRSCH LLC

                                        /s/ Javad Khazaeli
                                        Javad Khazaeli, 53735MO
                                        James R. Wyrsch, 53197MO
                                        Kiara Drake, 67129MO
                                        911 Washington Avenue, Suite 211
                                        Saint Louis, MO 63101
                                        (314) 288-0777
                                        (314) 400-7701 (fax)
                                        james.wyrsch@kwlawstl.com
                                        javad.khazaeli@kwlawstl.com
                                        kiara.drake@kwlawstl.com


                                        ARCHCITY DEFENDERS, INC.

                                        Blake A. Strode, 8422MO
                                        Michael-John Voss, 61742MO
                                        Sima Atri, 70489MO
                                        John M. Waldron, 70401MO
                                        440 N. 4th St., Suite 390
                                        Saint Louis, MO 63102
                                        855-724-2489 ext. 1021
                                        314-925-1307 (fax)
                                        bstrode@archcitydefenders.org
                                        mjvoss@archcitydefenders.org
                                        satri@archcitydefenders.org
                                        jwaldron@archcitydefenders.org


                                        Attorneys for Plaintiff