**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| DILLAN NEWBOLD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:18-CV-1572 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| CITY OF ST. LOUIS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS OR ALTERNATIVE MOTION TO STRIKE**

Defendants City of St. Louis, Gerald Leyshock, Scott Boyher, Timothy Sachs, Randy Jemerson, Matthew Karnowski, and Brian Rossomanno file these reply suggestions in support of their motion to dismiss.

**I.   Plaintiff failed to assert facts that support the existence of an unconstitutional policy or custom, so Count IV should be dismissed.**

Plaintiff's response argues that municipal liability should attach to the City because, as it alleges, the "City has a long history of responding with excessive force to protestors who are invoking their First Amendment Rights." (Doc. 37, p. 4). But a further look at the allegations asserted by the Plaintiff, as well as the exhibits attached the Second Amended Complaint make clear that there is no widespread custom of unconstitutional conduct "having the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 (1970).

Plaintiff is correct that she does not have to identify a specific policy which may be unconstitutional at the motion to dismiss stage. *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F.Supp. 3d 842, 867 (D. Minn. 2015). But, she "must allege facts which would support the existence of an unconstitutional policy or custom." *Id*. Here, Plaintiff is

attempting to set forth facts supporting a custom that the SLMPD has a custom of responding to protestors with "excessive force." (Doc. 37, pp. 4-5).

To establish municipal liability under §1983 on the basis of unofficial custom, a plaintiff must plead and prove (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees, (2) deliberate indifference to or tacit authorization of such conduct by the municipality's policymaking officials after notice to the officials of that misconduct, and (3) injury to the plaintiff caused by acts pursuant to that custom, i.e., the custom was the moving force behind the constitutional violation at issue. *Malone v. Hinman*, 847 F.3d 949 (8th Cir. 2017); *see also Board of County Commissioners v. Brown*, 520 U.S. 397, 405 (1997). The allegations in the Second Amended Complaint do not support a custom of excessive force by the City. To support their claim, Plaintiff provided a total of five previous events in which they allege the SLMPD improperly used chemical weapons since 2014. The first two events, which occurred in October and November 2014, provide no factual detail other than the location and that chemical weapons were used. With no other factual allegations, there are no facts which support the existence of a custom of using improper force at peaceful protests, just Plaintiff's speculation.

SLMPD subsequently entered into a consent decree resolving a lawsuit filed against them as part of the "Unified Command" with the St. Louis County Police Department and the Missouri Highway Patrol to clarify and refine its policies regarding the use of chemical munitions during protests. (Pl. Ex. B, p. 1; Pl. Ex. C). (Pl. Ex. B, C). Allegations relating to a settlement agreement refute the claim of municipal liability. The fact that the City entered into the settlement agreement regarding the manner of

2

responding to protests does not support the claim of an unconstitutional custom; rather it demonstrates that the City was not deliberately indifferent to any constitutional issues. *See Rogers v. City of Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998)(holding that a police department's investigation into prior allegations of misconduct demonstrated there was no deliberate indifference to the allegations by the Department).

Further, the incidents that Plaintiff has identified since the Consent order was issued do not provide evidence that a custom of the City led to any constitutional violation. *See Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Crawford v. Van Buren County, Ark.*, 678 F.3d 666, 669 (8th Cir. 2012). The consent decree specifically provides an exemption for "situations that turn violent," and in which "persons at the scene present an imminent threat of bodily harm to persons or damage to property. (Pl. Ex., p. 2). Indeed, the exhibits provided by Plaintiff are replete with factual allegations of violence toward police officers (*See* Pl. Ex. D, pp. 281, 285-86; 296-97); and allegations of property damage throughout the weekend, including earlier in the night of September 17, 2017. (*See* Pl. Ex. D., p. 283; Pl. Ex. E, pp. 9-10). Each of these events was part of the larger protest of the Stockley verdict. (*See* Doc. 33, ¶¶ 25-33). Further, Plaintiff even concedes illegal behavior occurred at one of the prior protests identified in the complaint. (Doc. 33, ¶ 42). For a municipality to be held liable on the basis of custom, or for there to have been a failure to train, "there must have been a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Jane Doe "A" v. Special School Dist.*, 901 F.2d 642, 646 (8th Cir. 1990). So there are no facts pleaded that demonstrate a

3

custom of violating the consent decree that the St. Louis Metropolitan Police Department entered into in 2015.

Plaintiff's attempt to fuse together the decision to engage in the "kettle" with a custom or policy of engaging in excessive force and unlawful arrests does not state a claim for municipal liability. Plaintiff's exhibits make clear that the order given from commanders to the officers does not match the allegations asserted. In Plaintiff's exhibit E, Defendant Sachs stated the purpose of the plan was to disperse the crowd. (Pl. Ex. E, p. 27). The plan was created after reports of property damage were made on September 17, 2017, leading SLMPD to the reasonable belief that additional damage would likely occur if the crowd did not disperse. (Pl. Ex. E, p. 27-28). The plan as articulated was to give notice that the protest was now an unlawful assembly, give a directive to disperse, and allow anyone who so wanted a reasonable time to leave. (Pl. Ex. E, p 29-31). Even if everything that the Plaintiff alleges is true, then at best, there are individual officers who did not follow the command as ordered. But the City cannot be held liable on a *respondeat superior* basis. *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (*citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). The facts alleged, taken as true, do not allege a widespread custom or policy that was the "moving force," behind any constitutional violation that Plaintiff may have experienced. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). So the claims for municipal liability against the City must be dismissed.

4

**II.    Plaintiff does not demonstrate how the claims against City police commanders or supervisors are plausible, given the principle that liability under 42 U.S.C. §1983 must be personal and not vicarious; plaintiff pleads only an unsupportable theory of supervisory liability for unlawful arrest or excessive force.**

In a § 1983 suit the term "supervisory liability" is a misnomer. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A supervisor is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as *respondeat superior* or supervisor liability. *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677).

> To state a claim, the plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution. Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the amended complaint must allege adequately that the defendant acted with such impermissible purpose, not merely that he knew of a subordinate's motive.

*L.L. Nelson Enters. v. County of St. Louis*, 673 F.3d 799, 810 (8th Cir. 2012 (internal citation omitted). A supervisor may be liable under § 1983 if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in "creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions. *Id.* In requiring a plaintiff to allege that each defendant was personally involved in the deprivation of his constitutional rights, courts assess each defendant relative to his authority over the claimed constitutional violation. *Id.*

Plaintiff fails to allege how, if at all, Defendants Leyshock, Sachs, Boyher, Jemerson, Rossomanno and Karnowski were personally involved in the deprivation of his

5

constitutional rights. Plaintiff's allegations that Defendant "Leyshock was the incident commander" on September 17, 2017, and that Defendant Leyshock "knew or should have known that there was no probable cause for the arrest of Plaintiff and that there was no legal justification to use force against Plaintiff," do not demonstrate that Defendant Leyshock had any personal involvement in Plaintiff being pepper sprayed and arrested. Moreover, Defendant Sachs' decision to effectuate "a mass arrest at Washington and Tucker, where Plaintiff was located," as alleged, does not demonstrate Defendant Sachs' personal involvement in Plaintiff's arrest. Defendant Sachs' decision to effectuate a mass arrest was, by its very terms, not personal to Plaintiff, but instead, a decision regarding individuals at the intersection of Washington and Tucker who were reasonably believed to have violated or to be violating the law. Further, Plaintiff's allegations against Defendants Boyher, Jemerson, Rossomanno, and Karnowski rely on the mere fact that they were "physically present" and "responsible for directing the officers under their command." Thus, Plaintiff's allegations invoke the very kind of *respondeat superior* liability § 1983 cases prohibit, see *Iqbal*, 556 U.S. at 677, and do not demonstrate any personal involvement on the part of these defendants in pepper spraying and arresting Plaintiff.

Plaintiff fails to allege how Defendants Leyshock, Sachs, Boyher, Jemerson, Rossomanno, and Karnowski were involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions, or that said Defendants failed to supervise or train offending officers.

As discussed in Defendants' arguments related to *Monell*, Plaintiff has failed to allege a City policy or custom that violates Plaintiff's constitutional rights. Even if

6

Plaintiff did so, he fails to allege how Defendants Leyshock, Sachs, Boyher, Jemerson, Rossomanno, and Karnowski, were involved in creating, applying, or interpreting said policy. Finally, Plaintiff fails to allege how Defendants Leyshock, Sachs, Boyher, Jemerson, Rossomanno, and Karnowski failed to train or supervise the offending officers as the only allegations regarding inadequate supervision and training are directed to City. (Doc. 33, Count IV).

Based on the above, Plaintiff fails to state a claim for supervisor liability against Defendants Leyshock, Sachs, Boyher, Jemerson, Rossamanno, and Karnowski.

**III. Application of the intracorporate conspiracy rule on a motion to dismiss is proper in this case under *Ashcroft v. Iqbal* and is mandated by the Supreme Court's rejection of any form of vicarious liability under 42 U.S.C. §1983; consequently, the Second Amended complaint does not plausibly allege an actionable §1983 conspiracy.**

Plaintiff argues that the intracorporate conspiracy rule cannot be applied in the context of a motion to dismiss, citing, among others, cases such as *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.*, 2014 U.S. Dist. LEXIS 14568 (E.D.Mo. 2014) and *Golden v. Moutray*, 2018 U.S. Dist. LEXIS 62828 (E.D.Mo. 2018). Defendant must respectfully submit that this facile analysis flies in the face of the principles enunciated by *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); indeed, the cases cited by plaintiff do not even mention *Iqbal*. In any event, the Second Amended complaint in this case provides ample basis for this Court to view the plausibility of the conspiracy claim, given the wholesale incorporation of hundreds of pages of testimony in another case, which are part of the complaint, *Sierra Club v. Con-Strux, LLC,* 911 F.3d 85 (2d Cir. 2018), and which, it is safe to say, put the complaint in this case in a different class. While defendant has questioned the propriety of this technique, *cf. U.S. v. Int. Longshoremen's Ass'n,* 518

7

F.Supp.2d 422 (E.D.N.Y. 2007) , the defendant can hardly be blamed for seeking to take advantage of the material proffered and relied on by plaintiff to plaintiff's detriment.

The Supreme Court has yet to determine if a conspiracy theory is a viable theory of liability under 42 U.S.C. §1983. *Cf. Ziglar v. Abbasi,* 137 S.Ct. 1843 (2017)(noting the question was still open under 42 U.S.C. §1985, which expressly pertains to civil rights conspiracies). Many courts have accepted the theory. Nevertheless, the theory seems to contravene the bedrock principle that liability under §1983 is personal and not vicarious. Further, insofar as the theory is invoked to fasten liability on a municipality, the theory also contravenes the related principle that a municipality cannot be liable on a theory of *respondeat superior*, but only on the basis of a policy or custom of the municipality that has the force of law.

It is elementary that the parameters of §1983 liability derive from the general law of torts. *E.g., Carey v. Piphus,* 435 U.S. 247 (1978). Under the law of torts, liability for a conspiracy is a form of vicarious or derivative liability: the conspirators are liable not for their agreement, but for an act pursuant to the agreement that injures the plaintiff. *See e.g., Royster v. Baker,* 365 S.W.2d 496 (Mo. 1963).

It follows, therefore, that a city cannot be liable under §1983 for a conspiracy among its employees--unless the employees are policymakers and their agreement can be said to represent the policy of the city. If that is so, of course, then there is no need to claim a conspiracy: the city is liable because of the decision of its policymakers. *Cf. City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988).

In the instant case, the Second Amended complaint cannot and does not plausibly allege that the City's policymakers agreed to order an illegal arrest of protesters on

September 17. On the contrary, the face of the pleading refutes the notion. The testimony of various witnesses in the *Ahmad* preliminary injunction hearing demonstrates that there was no agreement involving the Mayor or any other policymaker to execute unconstitutional arrests on September 17. Moreover, the testimony incorporated in the Second Amended complaint demonstrates that there was no "agreement" to make illegal arrests or use unlawful force:  the actions of the police were directed at arresting persons reasonably believed to be violating or to have violated the law. The City simply cannot be held liable on plaintiff's conspiracy theory. Likewise, the City's command or supervisory police officers cannot be liable on a conspiracy theory, which is merely *respondeat superior* by another name.

Assuming that a conspiracy theory is even viable under §1983, the Second Amended complaint does not plausibly plead such a claim against the City or its command or supervisory officers (including defendants Leyshock, Sachs, Jemerson, Karnowski, and Rossomanno). The intracorporate conspiracy rule precludes fastening liability on an entity and its employees acting within the scope of their authority. "The rule is derived from the nature of the conspiracy prohibition. Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons. When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people." *Abbasi,* supra, 137 S.Ct. at 1868.

Here, the Second Amended complaint shows that the command or supervisory officers were acting within their discretion to arrest persons who, in their opinion, were

9

violating the law by, among other things, blocking traffic on major thoroughfares in the City, and in light of previous vandalism by persons who were part of the same crowd that were to be arrested. Leaving aside the question of qualified immunity, it is clear that the acts of the command and supervisory officers cannot constitute an actionable conspiracy. Further, despite the conclusional allegations of the Second Amended complaint, the incorporated preliminary injunction evidence shows that there was no directive by any command officer to use unlawfully excessive force during the arrests. On the contrary, the Second Amended complaint on its face refutes any contention that a conspiracy claim is "plausible."

**IV.   The individual defendants are entitled to official immunity against the state law claims, given that the pleading on its face establishes that defense.**

While official immunity, unlike sovereign immunity, is an affirmative defense to a Missouri tort claim, the face of the Second Amended complaint shows that defendant officers are entitled to official immunity. Plaintiff argues that his claims fall within the bad faith exception to official immunity. Plaintiff argues Defendant officers are not entitled to official immunity because they acted with bad faith or malice. However, bare, conclusory allegations of malice, without specific facts evidencing bad faith, are insufficient to satisfy the bad faith exception. *Stephens v. Dunn*, 453 S.W.3d 241, 251. Plaintiff's Second Amended complaint fails to allege specific facts evidencing bad faith or malice on the part of Defendant officers. The Second Amended complaint does not allege any facts evidencing bad faith or malice specific to named officers Leyshock, Boyher, Sachs, Jemerson, Rossomanno and Karnowski acting in their discretionary duties. The Missouri Supreme Court noted bad faith or malice requires "actual intent to cause injury," "intentional doing of a wrongful act without legal justification or excuse,"

10

and "done knowingly and deliberately, for an improper motive." *Stephens v. Dunn*, 453 S.W.3d 241, 251. Plaintiff argues, "an officer of reasonable intelligence would recognize that arresting and consciously or intentionally injuring a law-abiding citizen for exercising her First Amendment rights is a violation of his duties as an officer." (Doc. 37, pp. 12-13). However, deciding to arrest someone is a discretionary act because "the officer must decide what course should be pursued based on the circumstances at hand." *White v. Jackson*, 865 F.3d 1064, 1074. Here, Defendant officers were performing discretionary acts in the course of deciding to arrest Plaintiff based on the circumstances at hand including the Plaintiff's failure to disperse. Therefore, defendant officers are entitled to official immunity.

**V.    Plaintiff does not plead sufficient facts to show waiver of sovereign immunity by the City, notwithstanding the effort to inject extrinsic documents.**

In this case, Plaintiff claims Defendant City has waived sovereign immunity and is therefore no longer shielded from tort liability. Plaintiff concludes his/her bare allegations that "City obtains insurance from or is self-insured though the Public Facilities Protection Corporation (PFPC) a not for profit corporation into which the City pays funds yearly" are  "sufficient to state a plausible claim that the City has waived sovereign immunity" and boldly claims these statements must be accepted as true. (Doc. 37, p. 13). Plaintiff cites to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) in an attempt to bolster his/her conclusion.

Plaintiff's citation, however, misapplies *Iqbal* as Defendant City's alleged waiver of sovereign immunity though "self-insurance" is a legal conclusion and not a statement of fact. "Sovereign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case." *St. John's Clinic v. Pulaski Cty. Ambulance Dist.*, 422

11

S.W.3d 469, 471 (Mo. App. S.D. 2014) *citing to Shifflette v. Missouri Dept. of Nat. Resources*, 308 S.W.3d 331, 334 (Mo.App.W.D. 2010). "The application of sovereign immunity to a defendant is a question of law." *Kreutz v. Curators of Univ. of Mo.,* 363 S.W.3d 61, 63–64 (Mo. App. W.D. 2011).

According to the Court in *Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation"). *Id.* at 679 (internal citations omitted). As Plaintiff's allegations that the PFPC is an insurance policy or constitutes self-insurance are not statements of fact, this Court is not bound to accept them as true. Instead, to survive a Motion to Dismiss, Plaintiff must come forward with sufficient facts to establish a waiver of sovereign immunity—a burden he will be unable to carry in this case.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the Defendants' Memorandum in Support of their Motion to Dismiss, Defendants City, Leyshock, Boyher, Sachs, Jermerson, Karnowski, and Rossomanno submit that the second Second Amended complaint (Doc. 33) can and must be dismissed. In the alternative, Defendants requests that ¶¶ 19-24; 26-27; 36-40; 52 and 116-126 be stricken from the complaint and no answer thereto required. Defendants further request any other such relief as the Court deems appropriate.

Respectfully submitted,

JULIAN L. BUSH,
CITY COUNSELOR

*/s/Robert H. Dierker 23671MO*
Robert H. Dierker
Associate City Counselor
dierkerr@stlouis-mo.gov
Brandon Laird 65564MO
Assistant City Counselor
Abby Duncan 67766MO
Assistant City Counselor
Megan Bruyns 69987MO
Assistant City Counselor
Amy Raimondo 71291MO
Assistant City Counselor
314 City Hall
1200 Market St.
St. Louis, MO  63103
314-622-3361
FAX 314-622-4956

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2019, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system.

*/s/ Brandon laird*
Brandon Laird
Assistant County Counselor