| | | |
|---|---|---|
| DILLAN NEWBOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:18CV1572 HEA |
| | ) | |
| CITY OF SAINT LOUIS, MISSOURI, | ) | |
| et al., | ) | |
| | ) | |
| Defendants, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants City of St. Louis, Gerald Leyshock, Timothy Sachs, Scott Boyher, Randy Jemerson, Matthew Karnowski, and Brian Rossomanno's Motion to Dismiss and Alternative Motion to Strike, [Doc. No. 35]. Plaintiffs oppose the Motion, which has been fully briefed. For the reasons set forth below, the Motion to Dismiss is denied in part and granted in part. The Motion to Strike is denied.

### Facts and Background[1]

This and several other cases filed in this District share a general set of facts regarding the actions of St. Louis Metropolitan Police Department ("SLMPD")

---

[1] The recitation of facts is taken from Plaintiff's Second Amended Complaint and is set forth for the purposes of the pending motion to dismiss. The recitation does not relieve any party of the necessary proof of any stated fact in future proceedings.

officers during peaceful protests following the September 15, 2017 verdict in *State of Missouri v. Stockley*. *See Aldridge v. City of St. Louis, Mo.*, No. 4:18-CV-1677 CAS, 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019); *Laney v. City of St. Louis, Mo.*, No. 4:18-CV-1575 CDP, 2019 WL 2423308, (E.D. Mo. June 10, 2019); *Laird v. City of St. Louis, Mo.*, No. 4:18-CV-1567 AGF, 2019 WL 2647273 (E.D. Mo. June 27, 2019); *Alston v. City of St. Louis, Mo.*, No. 4:18-CV-1569 AGF, 2019 WL 2869896 (E.D. Mo. July 3, 2019); *Thomas v. City of St. Louis, Mo.*, No. 4:18-CV-1566 JAR, 2019 WL 3037200 (E.D. Mo. July 11, 2019). Those facts, as well as the allegations specific to Plaintiff Dillan Newbold, are as follows:

On September 15, 2017, the Circuit Court of the City of St. Louis, Hon. Timothy Wilson, issued its findings and verdict in *State of Missouri v. Stockley* acquitting former SLMPD officer Jason Stockley of first-degree murder of Anthony Lamar Smith. The verdict prompted some members of the St. Louis community to engage in protests in St. Louis and the surrounding communities. The protests concerned not only the verdict but broader issues, including racism and the use of force by police officers. Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields" and carrying chemical agents.

Plaintiff Dillan Newbold ("Newbold") is a medical student at Washington University. He has lived in St. Louis since 2014 and has participated in several

socio-political protests.  On September 17, 2017, Newbold went to downtown St. Louis with friends to protest the acquittal of Jason Stockley.  About 100 people were scattered around the area of Washington Avenue and Tucked Boulevard, though no large groups were formed.  Newbold walked around the block, ending up a block south of Washington and Tucker.  There, he saw police officers on bicycles herding pedestrians north toward Washington and Tucker and heard screaming from an alley.  He ran to the alley and saw a line of police officers in riot gear marching down the alley.  At no point did Newbold hear any police warnings or orders to disperse.

Newbold attempted to return to his car at Washington and Tucker, where a crowd was beginning to form.  Police were blocking all points of egress from the intersection of Washington and Tucker, with a line of bicycle officers to the east and full lines of riot police beating batons on the other three sides.  The police marched inward, pushing people into the northeast corner of the intersection.  Newbold asked officers "How can we leave?"  The only response he received were shouts of "Move back."

Newbold, fearing the SLMPD would use chemical agents on the protestors, put on a bandana and goggles.  As armored police approached the crowd, protestors began putting their arms up and sitting down.  Newbold, responding to an officer's order to "get down," sat down on the ground and began recording

video on his phone. A police officer told Newbold to "Put your damn phone away and sprayed his face with a small amount of pepper spray. Newbold stopped filming and moved into a fetal position.

A police officer then reached down and pulled off Newbold's bandana and goggles. The police officer dragged Newbold by the waistband about five feet into the street, scraping Newbold's hip and knee. Another officer sprayed Newbold in the face with pepper spray. Newbold's hands were tightly zip tied behind his back, so he could not wipe his face. Newbold shouted that he could not breathe. An officer shouted that "That's what idiots say." Another officer allegedly stood over Newbold and mocked him, saying "Are you proud now? Are you going to tell your wife about this? You better not. I'm so glad I'm in St. Louis and get to do s**t like this!"

After a few minutes, Newbold experienced intense pain in his wrists and hands from the zip ties. He asked at least six police officers to loosen the zip ties, telling them that he was concerned about nerve damage. He was ignored. Officers placed Newbold in the back of a transport van with about eight other arrestees. On the ride to the Justice Center, the van driver slammed on the brakes, causing the arrestees to slam into one another.

After about 15 minutes in zip ties, Newbold lost all sensation in his hands. When Newbold was put in a holding cell, his hands were purple. He tried to get an

officer's attention to loosen the zip ties. Ten minutes later, an officer removed the zip ties. This was about an hour and fifteen minutes after Newbold's arrest.

Newbold was detained for over fifteen hours, during which he continued to experience pain caused by the pepper spray. He was concerned about pepper spray under his contact lenses but could not remove them due to mace on his hands.

Immediately after his release, Newbold went to the student health office. There, he was directed to the emergency room. He was diagnosed with neuralgia (nerve pain) and neuropraxia (loss of sensation due to nerve injury.) He experienced hypersensitivity to heat and pain, as well as no sensation in some parts of his right hand for two days after his arrest. Newbold did not recover full sensation in his right hand for nearly two months.

The SAC also contains allegations that none of the individuals inside the crowd of protestors (the "kettle") on September 17, 2017 were acting violently and aggressively, yet they were kicked, beaten, dragged, and sprayed with chemical agents. Further, during and after the arrests of protestors, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!"

In addition to the Defendant City of St. Louis, Missouri (the "City"), the SAC names several SLMPD officers as defendants, including six supervisory

officers (collectively, "Supervisory Defendants"), the arresting officer, and five

"John Doe" SLMPD officers. Lieutenant Colonel Gerald Leyshock was the

incident commander during the events of September 17, 2017. Leyshock allegedly

approved the plan to prevent civilians from leaving the vicinity of Washington

Avenue and Tucker Boulevard and to arrest everyone present. Lieutenant Timothy

Sachs allegedly developed the plan described above, deployed the tactical units

accordingly, and ordered the use of chemical agents. Lieutenant Scott Boyher

allegedly directed officers under his command to block protestors in and directed

the officers to use force against and to arrest protestors. Sergeant Matthew

Karnowski allegedly declared the protests an "unlawful assembly," which SLMPD

used as a predicate to the arrests and use of the chemical agents. Karnowski also

directed the officers under his command to use force against and to arrest

protestors. Sergeant Randy Jemerson is a supervisor with the SLMPD's Civil

Disobedience Team and directed people to the intersection of Washington and

Tucker pursuant to the plan described above. Sergeant Brian Rossomanno also

allegedly directed people to the intersection, and was "within arms-length" of the

officers who pepper sprayed and used force against protestors. The City and these

Supervisory Defendants brought the instant Motion to Dismiss. Also named as

defendants, but not party to this motion, are Officer Terrence Ruffin, who arrested

Newbold, and John Does #1-5, who are unidentified SLMPD officers. The Doe

defendants allegedly arrested, used chemical munitions against, beat, and prevented the movement of Newbold. Newbold cannot identify the Doe officers because they removed their name tags and wore masks.

Newbold asserts 13 counts. Claims made against the individual defendant officers and pursuant to § 1983 include: Fourth Amendment unlawful seizure (Count I), violation of the First Amendment rights to speech and assembly (Count II), and Fourth Amendment excessive force (Count XII). Count IV asserts § 1983 claims against the City alleging municipal liability for the officers' unlawful actions. Count III alleges a conspiracy between all Defendants to deprive Newbold's civil rights. Finally, Plaintiff asserts supplemental state-law claims against all Defendants alleging assault (Count V), false arrest (Count VI), false imprisonment (Count VII), abuse of process (Count VIII), malicious prosecution (Count IX), intentional infliction and negligent infliction of emotional distress (Counts X and XI), and battery (Count XIII).

The City and Supervisory Defendants first move to dismiss the SAC pursuant to Federal Rule of Civil Procedure 8(a) which requires a "short and plain statement of the claim." Alternatively, the City and Supervisory Defendants move to strike parts of the SAC under Fed. R. Civ. P. 12(f) as immaterial and impertinent.

Next, the City and Supervisory Defendants move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The City moves to dismiss the § 1983 claim against it for failing to adequately allege municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The City moves to dismiss the civil conspiracy claim against it as barred by the intracorporate conspiracy doctrine; in addition, the City and Supervisory Defendants argue that the claims underlying the conspiracy claim fail, leaving no viable conspiracy action. The Supervisory Defendants move to dismiss the § 1983 claims against them, arguing that the SAC does not show that the Supervisory Defendants personally participated in any constitutional tort.

The City and Supervisory Defendants move to dismiss the state law claims, invoking sovereign immunity as to the City and official immunity as to the Supervisory Defendants. The City also argues that Plaintiff's claim against it for punitive damages arising from state law claims is barred by Missouri law.

The legal arguments in support of and in opposition to Defendants' instant motion mirror those made in the above referenced *Stockley* protest cases. The judges in this District that have addressed these arguments have reached the same or similar conclusions. *See Aldridge*, 2019 WL 1695982; *Laney*, 2019 WL 2423308; *Laird*, 2019 WL 2647273; *Alston*, 2019 WL 2869896; *Thomas*, 2019 WL 3037200. Upon careful consideration of the parties' arguments and review of

the record in this case, and discussed in detail below, this Court is in agreement with the reasoning and conclusions of its fellow judges.

## Standard of Review

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint states a plausible claim for relief if its 'factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

When considering a 12(b)(6) motion, the district court accepts as true all factual allegations in the complaint and grants all reasonable inferences in favor of the nonmoving party. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Twombly*, 550 U.S. at 555. The principle that a

court must accept as true all of the allegations contained in a complaint does not

apply to legal conclusions. *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice").

## Discussion

## Rule 8(a) Motion to Dismiss and Alternative Motion to Strike

The City and Supervisory Defendants object to the SAC as "neither short

nor plain." They object to so-called "inflammatory rhetoric" regarding the

*Stockley* verdict, "scattershot allegations," and "objections to policing in general."

They also object to "voluminous exhibits" and the inclusion of a settlement

consent decree regarding public protests that involved the State of Missouri and St.

Louis County, as well as the City. The City and Supervisory Defendants move to

dismiss the SAC as noncompliant with Rule 8(a), or to strike the immaterial and

impertinent paragraphs from the SAC under Rule 12(f).

At a minimum, "the complaint's factual allegations and the supporting

exhibits to which the City and [Supervisory Defendants] object are relevant to

[Plaintiff's] municipal liability claim." *Laird*, 2019 WL 2647273, at *4. *See also*

*Laney*, 2019 WL 2423308, at *3; *Aldridge*, 2019 WL 1695982, at *4. Defendants'

motion to dismiss under Rule 8(a) will be denied, as will their alternative motion to

strike.

**Rule 12(b)(6) Motion to Dismiss**

      I.     <u>Municipal liability under § 1983</u>

Section 1983 liability attaches to a governmental entity only if a plaintiff shows that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). The City moves to dismiss the § 1983 claim against it, alleging a failure to make this showing.

Count IV of the SAC alleges that the following policies, practices, and customs caused constitutional harm to Newbold:

    a.  SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;

    b.  SLMPD custom or policy of using kettling without warning on citizens who are not resisting arrest and who are exercising First Amendment rights, whether those rights be protesting or reporting;

    c.  SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

    d.  SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens of unlawful conduct;

    e.  Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

Newbold also alleges that the "City has inadequately trained, supervised, and

disciplined SLMPD officers, with respect to its officers' use of kettling and excessive force," and that these failures amount to deliberate indifference of the City. These allegations are identical to those in the above named *Stockley* protest cases in this District.

The judges in this District who have ruled on this issue in *Stockley* protest cases have found that plaintiffs adequately plead municipal liability based on an official policy or custom, but do not adequately plead facts to support a municipal liability claim based on the City's failure to train or supervise. *See Aldridge*, 2019 WL 1695982, at *10; *Laney*, 2019 WL 2423308, at *5; *Laird*, 2019 WL 2647273, at *5. This Court agrees.

To establish a claim for municipal liability due to a "custom," a plaintiff must show:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). As Judge Fleissig noted in *Laird*, the SAC fulfills the Rule 12(b)(6) requirements with respect to these elements:

Plaintiffs allege a pattern of using chemical agents without warning against peaceful protestors complaining of police actions, including incidents in October and November 2014, in May and August 2015, and in July 2017; as well as additional incidents that occurred after the Stockley verdict on September 15, 2017, and thereafter. Plaintiffs also allege that the City entered into a settlement agreement in March 2015 in *Templeton, et al. v. Dotson, et al.*, No. 4:14-CV-2019 CEJ (E.D. Mo.), in which it agreed not to use chemical agents to disperse groups of individuals engaged in non-criminal activity without first issuing clear and unambiguous warnings that such chemical agents would be used and without ensuring that there is a means of safe egress from the area (among other protections), but that thereafter SLMPD officers continued to use chemical agents against non-violent protestors without adequate warning or opportunity to comply. These factual allegations are sufficient to support the existence of an unconstitutional policy or custom that plausibly caused the constitutional violations here.

2019 WL 2647273, at *5.

Regarding the failure to train or supervise, however, the SAC makes only conclusory allegations that do not satisfy Rule 12(b)(6). For his failure to train or supervise claim to survive a motion to dismiss, Newbold's was required to plead facts sufficient to show that: 1) the City's officer training and supervision practices were inadequate; 2) the City was deliberately indifferent to the rights of others in adopting these practices, and the City's failure to train and supervise was a result of deliberate and conscious choices it made; and (3) the City's alleged training and supervision deficiencies caused Newbold's constitutional deprivation. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). The only allegation regarding training and supervision in the SAC reads, "City has inadequately trained,

supervised, and disciplined SLMPD officers, with respect to its officers' use of kettling and excessive force." This statement is conclusory and is insufficient to state a claim. *See Aldridge*, 2019 WL 1695982, at *11; *Laney*, 2019 WL 2423308, at *6; *Laird*, 2019 WL 2647273, at *6.

The Court will therefore deny the City's motion to dismiss Newbold's § 1983 municipal liability claim in part and grant it in part. The motion will be denied as to the claim of municipal liability based on policy or custom. The claim of municipal liability based on a failure to supervise and train will be dismissed.

## II.     Civil conspiracy

The City argues that the civil conspiracy claim should be dismissed as to the City because the claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1078 (8th Cir. 2016) (quoting *L.L. Nelson Enters., Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir.2012)).

The judges of this District have declined to apply the intracorporate conspiracy doctrine to § 1983 civil conspiracy claims in the other *Stockley* protest cases, *see Aldridge*, 2019 WL 1695982, at *7-8; *Laird*, 2019 WL 2647273, at *5, as well as previous unrelated cases, *see Powers v. City of Ferguson*, 229 F.Supp.3d

894, 906 (E.D. Mo. 2017); *Golden v. Moutray*, 2018 WL 1784395, at \*4 (E.D. Mo. Apr. 13, 2018); *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.*, 2014 WL 466234, at \*8 (E.D. Mo. Feb. 5, 2014). Notably, the Eighth Circuit has not directed application of the doctrine to § 1983 conspiracy claims, and *Kelly*, upon which the City relies, involved a conspiracy claim brought under a different statute. *Id.* As such, extension of the doctrine to § 1983 claims at the pleading stage is inappropriate. *Id.*

In addition, this Court agrees with other judges of this District that the doctrine is particularly inapt in § 1983 excessive force cases:

> Some courts have held that the intracorporate conspiracy doctrine does not protect conspiracies to commit excessive force under Section 1983. *See, e.g., McDorman v. Smith*, 2005 WL 1869683, at \*6 (N.D. Ill. Aug. 2, 2005). Those courts have reasoned that "the intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory," *Newsome v. James*, 2000 WL 528475, at \*15 (N.D. Ill. Apr. 26, 2000), and "police misconduct ... does not fit that mold because conspiracy and cover-up are not the product of routine police department decision-making." *McDorman*, 2005 WL 1869683 at \*6; *see also Howard v. City of Chicago*, 2004 WL 2397281 at \*12 (N.D. Ill. Oct. 25, 2004).

*Aldridge*, 2019 WL 1695982, at \*8 (quoting *Golden*, 2018 WL 1784395, at \*4). Dismissal of Newbold's § 1983 conspiracy claim based on the intracorporate conspiracy doctrine is not warranted at this time.

The City and Supervisory Defendants also argue that Newbold's conspiracy claim fails because each claim underlying the conspiracy count fails. However, the

motion to dismiss does not even address the constitutional violations alleged in Counts I and VII of the SAC. At a minimum, a § 1983 conspiracy could be proved based on either of those violations. The motion to dismiss will be denied as to Count III, the civil conspiracy claim.

III.    Individual § 1983 claims

The Supervisory Defendants move to dismiss the § 1983 claims against them because, they argue, the SAC does not show that they personally participated in any constitutional tort. The Supervisory Defendants are correct in their assertion that *respondeat superior* liability does not apply to § 1983 claims. However:

> a supervisor may be held liable under section 1983 for the unconstitutional conduct of his subordinates in four situations: (1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation occurred. *Lansdown v. Chadwick*, 152 F.Supp.2d 1128, 1146 (W.D.Ark.2000); *see Webster v. Gibson*, 913 F.2d 510, 514 (8th Cir.1990) (direct participation); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir.1981) (failure to intervene); *Tilson v. Forrest City Police Dep't.*, 28 F.3d 802, 806 (8th Cir.1994) (failure to train or supervise); *Williams v. Smith*, 781 F.2d 319, 323–34 (2d Cir.1986) (policy or custom).

*B.J.G. ex rel. McCray v. St. Charles County Sheriff*, No. 4:08CV1178 CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010), *aff'd sub nom. B.J.G. ex rel McCray v. St. Charles County Sheriff*, 400 F. App'x 127 (8th Cir. 2010). To incur liability for a violation, "[t]he supervisor must know about the conduct and facilitate it,

approve it, condone it, or turn a blind eye for fear of what [he] might see." *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003).

The Supervisory Defendants' memorandum in support of dismissal does not mention the claims against them in Count I (First and Fourteenth Amendment) and Count II (civil conspiracy.) It refers only to the purported requirements of "a complaint against a supervisory police officer on the basis of a subordinate's use of force." Consequently, the Court concludes that the Supervisory Defendants' motion is directed only at Count VII which alleges excessive force in violation of the Fourth and Fourteenth Amendment and limits its discussion accordingly.

Count VII alleges excessive force used by SLMPD officers on Newbold, including dragging, zip-cuffs, kettling, and pepper spray. The allegations as to each of the Supervisory Defendants outline their specific roles in planning, approving, and executing the alleged uses of force. The Supervisory Defendants' motion to dismiss the § 1983 claims against them will be denied.

IV.     State law claims

The City and Supervisory Defendants move to dismiss the state law claims as alleged in Counts V, VI, VII, VIII, IX, X, XI and XIII based on: 1) sovereign immunity of the City, 2) official immunity of the Supervisory Defendants, 3) duplicative claims, and 4) the City's immunity from punitive damages.

a.  Sovereign Immunity

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921-22 (Mo. banc 2016). Missouri law provides three statutory exceptions to sovereign immunity, including, as relevant here, when a political subdivision purchases liability insurance to cover certain tort claims, in the amount of and for the purposes covered by the insurance purchased. Mo. Rev. Stat. § 537.610.1; *see also Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity" by pleading the existence of insurance and that the insurance covers the plaintiff's claim. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

In the SAC, Newbold alleges that:

Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City.

Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters...."

By possessing such insurance or self-insurance, the City has waived
sovereign immunity on state claims pursuant to § 537.610.1, RSMo.

The Court agrees with the other judges in this District who have held that the
same or similar allegations of PFPC insurance or self-insurance are sufficient at the
pleading stage to demonstrate that the state-law tort claims fall within an exception
to sovereign immunity under § 537.610.1.  *See, e.g., Aldridge*, 2019 WL 1695982,
at *13; *Laney*, 2019 WL 2423308, at *7; *Laird*, 2019 WL 2647273, at *6; *Thomas*,
2019 WL 3037200 at *7; *see also Fortenberry v. City of St. Louis*, No. 4:18-CV-
01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019).  The City's
motion to dismiss the state law claims on the basis of sovereign immunity will be
denied.

b.  Official Immunity

"[T]he official immunity doctrine protects public officials from liability for
injuries arising out of their discretionary acts or omissions, but not from liability in
claims arising from their performance of ministerial acts."  *Reasonover v. St. Louis
County, Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted).  "[A] police
officer's decision to use force in the performance of his duties is discretionary
rather than ministerial."  *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015)
(citation omitted).

However, "official immunity does not apply to discretionary acts done in
bad faith or with malice."  *Id.*  "Acting with malice requires an actual intent to

cause injury." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (*citing State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986)). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.*

The SAC states facts from which it could reasonably be inferred that the Supervisory Defendants acted with malice or in bad faith by participating in the kettling of protestors, using pepper spray without warning, arresting Newbold although he was not engaged in unlawful activity, and participating in chants and taunts. *See, e.g., Aldridge*, 2019 WL 1695982, at *14; *Laney*, 2019 WL 2423308, at *8; *Laird*, 2019 WL 2647273, at *7; *Thomas*, 2019 WL 3037200 at *8. The Supervisory Defendants' motion to dismiss the state law claims on the basis of official immunity will be denied.

c. "Duplicative" claims

The City and Supervisory Defendants contend that: 1) Newbold cannot state claims for intentional infliction and negligent infliction of emotional distress (Counts X and XI) because he the same facts give rise to another tort, namely, assault, and 2) Newbold cannot state a claim for assault (Count V) and a claim for battery (XIII) because "every battery includes an assault." These statements are without merit.

"The torts of intentional and negligent emotional distress are 'intended to supplement existing forms of recovery,' provided that the elements of such a claim are adequately pled." *Laird*, 2019 WL 2647273, at *7 (quoting *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 580 (Mo. Ct. App. 1998), *abrogated on other grounds by Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016)).  The motion to dismiss does not dispute that Newbold adequately pled facts in support of the elements of the emotional distress claims.  The motion to dismiss these claims will be denied.

"[A]ssault and battery are two distinct causes of action." *Devitre v. Orthopedic Ctr. Of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. 2011).  Rule 8(d) of the Federal Rules of Civil Procedure expressly allows a plaintiff to plead alternative claims.  The motion to dismiss these claims for failure to state a claim will be denied.

d.  Punitive damages

Newbold concedes that he cannot recover punitive damages against the City on the state law claims under Mo. Rev. Stat. § 537.610.3.  Similarly, Newbold's claims against the Supervisory Defendants in their official capacity are equivalent to claims against the City itself; thus, Newbold is also barred from recovering punitive damages against the Supervisory Defendants in their official capacities.  Accordingly, the Court will strike Newbold's request for punitive damages on his

state law claims against the City; the punitive damages request will be stricken against the Supervisory Defendants in their official capacities only.

## Conclusion

For the foregoing reasons, the City and Supervisory Defendants' Motion to Dismiss will be denied except as to the § 1983 claim against the City's based on a failure to supervise and train, and the requests for punitive damages on the state law claims that are barred by Missouri statute.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss and Alternative Motion to Strike [Doc. No. 35] is **GRANTED in part and DENIED in part**. The motion is **GRANTED** only as to the failure-to-supervise-and-train claim in Count IV (the remainder of Count IV survives dismissal) and the request for punitive damages on the state law claims against the City of St. Louis and against Gerald Leyshock, Timothy Sachs, Scott Boyher, Randy Jemerson, Matthew Karnowski, and Brian Rossomanno in their official capacities. The motion is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' earlier Motion to Dismiss [Doc. No. 17] is **DENIED as moot** by the filing of the Second Amended Complaint.

Dated this 16th day of July, 2019.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE