**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DILLAN NEWBOLD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 4:18-cv-01572-HEA |
| | ) |
| CITY OF SAINT LOUIS, MISSOURI, et al. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

In their Motion for Judgment on the Pleadings, Defendants set forth a false, self-serving narrative of supposedly uncontested facts which ignores the allegations in Plaintiff's Amended Complaint. While Defendants are certainly entitled to put forward their view of the evidence in a motion for summary judgment, in this Motion, Defendants are required to treat the facts in the light most favorable to Plaintiff. This Court may affirm a dismissal on the pleadings "only if it is clear that *no* relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (emphasis added). Defendants' factual recitation distorts the record and rests on contested facts and inferences contrary to Plaintiff's pleaded facts.

As Defendants note, courts traditionally follow a restrictive standard in ruling on 12(c) motions, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2011). The contrast between Plaintiff's and Defendants' depictions of the circumstances of Plaintiff's arrest establishes that there are material facts to resolve.

This filing by the Defendants is even more puzzling given its timing. Defendants have raised many of these arguments in their prior motions to dismiss in this and other cases arising

1

from the September 17, 2017 mass arrest, and this Court and other courts have already denied those motions to allow these cases to move into discovery. Doc. No. 39. Specifically, this Court has denied Defendants' argument that the intracorporate conspiracy doctrine should bar Plaintiff's claim multiple times, noting each time that judges in this district have collectively held it inappropriate to apply this doctrine at the pleadings stage. *Id.* (citing *Aldridge v. City of St. Louis*, No. 4:18-CV-1677, 2019 WL 1695982, at *8 (E.D. Mo. 2019)). Defendants offer no reason for the Court to reconsider its decision at this stage. And, as this Court is well aware, the parties have been mired in extensive limited discovery around the identity of the John Doe Defendants for the better part of a year, given the St. Louis Metropolitan Police Deparment's failure to fully document the force used during the mass arrest. Doc Nos. 58, 62, 68, 75. Due to extensive efforts from Plaintiff, which include over twenty depositions, interrogatories, and hours of video footage, the parties are within striking distance of identifying these defendants, which will allow Plaintiff to finally amend the pleadings. It is difficult to see this Motion as anything other than a delay tactic and a waste of judicial resources. The Motion should be denied in full.

## FACTS

On the evening of September 17, 2017, Plaintiff Dillan Newbold went with a friend to the downtown protests of the acquittal of Jason Stockley. Doc. No. 33 at ¶ 129. Plaintiff parked at the intersection of Washington Avenue and Tucker Boulevard. *Id.* at ¶ 130. He and his friend walked west on Washington Avenue, south on Thirteenth Street, and then east on St. Charles Avenue, arriving at the intersections of St. Charles Avenue and Tucker Boulevard. *Id.* at ¶ 132. At the intersection, Plaintiff saw a group of police officers with bicycles roaming around, herding pedestrians north toward the intersection. *Id.* at ¶ 133. Plaintiff heard screaming from an alley on St. Charles Avenue and went over to see what was happening. *Id.* at ¶ 134. At that time, Plaintiff saw a line of police officers in riot gear marching quickly down the alley. *Id.* at ¶ 135. Plaintiff did not hear any police warnings or order to disperse, at any point in the night. *Id.* at ¶ 137.

At the intersection, Plaintiff heard an officer ordering the crowd to get down, but he did not know whether the officer meant for people to sit or lie down. *Id.* at ¶ 141. He sat down and used is phone to film the surrounding activities. *Id.* at ¶¶ 141-142. A police officer told Plaintiff, "Put your damn phone away" and sprayed a small amount of pepper spray in his face. *Id.* at ¶ 143. Plaintiff stopped filming as directed, putting his head down and moving into a fetal position. *Id.* at ¶ 144. As Plaintiff laid on the ground without resisting, another police officer dragged him approximately five feet out into the street, scraping his hip and knee. *Id.* at ¶¶ 145-146. Plaintiff was then pepper sprayed directly in his face, and he was placed in tight zipped cuffs. *Id.* at ¶¶ 147-148. Officers began mocking Plaintiff when he had difficulty breathing due to the pepper spray on his face. *Id.* at ¶¶ 150-152. At the scene, officers also ignored Plaintiff when he asked them to loosen the zipped-cuffs due to the intense pain in his wrists and hands. *Id.* at ¶¶ 154-155.

A handful of individuals broke windows and flowerpots on the 900, 1000, and 1100 blocks of Olive Street, but no officers reported any violence or property destruction after 8:30 pm. *Id.* ¶¶ 45, 60, 118; Doc. No. 33-9 at 37. Nevertheless, Defendant Gerald Leyshock, the incident commander during the events of September 17, 2017, and Defendant Timothy Sachs, who was in direct command and responsible for deploying tactical units, approved the plan to arrest everyone present *three hours later*, at 11:30 pm. Doc. No. 33 at ¶¶ 10, 47, 58; Doc. No. 33-5 at 70. Defendant Sachs developed the plan to amass police officers in such a manner that citizens would be unable to exit, and Defendant Leyshock approved the plan. Doc. No. 33-5 at 70.

Defendants Brian Rossomano and Randy Jemerson were in charge of the Civil Disobedience Team that effectuated arrest and were responsible for carrying out the mass arrest. Defendant Rossomanno issued a dispersal order at 10:50 pm at the intersection of Tucker and Locust Street, directing people to move to the sidewalk and leave the area. Doc. No. 33-6 at ¶¶ 43, 44. The order did not specify how far civilians had to move in order to comply; even the officers were unsure. Doc. No. 30 ¶ 119. Defendant Sachs could not even hear the order. *Id.* ¶ 53. The

vague, inaudible dispersal order was merely a pretense for the illegal arrests of peaceful citizens, as the St. Louis Metropolitan Police Department (hereinafter "SLMPD") had already decided to arrest everyone in the vicinity of Tucker and Washington at about 10:00 pm. *Id. ¶¶* 52, 120, 121. Worse, Defendants Rossomanno, Jemerson, and Matthew Karnowski directed civilians to Washington and Tucker for that purpose. *Id. ¶¶* 54-55, 120-121, 138. The mass arrest occurred at 11:30 pm – 40 minutes after the last dispersal order – and two blocks away from the dispersal order, and despite the fact that the civilians present at Washington and Tucker at that time were calm and not engaged in any violent activity. *Id. ¶¶* 83, 121, 140. Even Defendants admit that "the crowd at that time was not engaged in violence or vandalism."[1] *Nelson v. City of St. Louis*, No. 4:18-cv-01561-JCH, Doc. No. 78 at 3.

Defendants Scott Boyher, Jemerson, Karnowski, and Rossomanno were all physically present at the illegal kettling location and were responsible for directing the officers under their command. Doc. No. 33 at ¶¶ 11, 13-15, 52, 55, 58, 67, 82, 93, 102, 119, 126. Defendants Boyher and Karnowski directed the officers under their command to arrest and use force against the peacefully assembled individuals. *Id. ¶* 82. Defendants Boyher, Jemerson, Karnowski, and Rossomanno observed SLMPD officers as they pepper sprayed and beat compliant citizens but did nothing to intervene. *Id. ¶¶* 11, 13-15, 52, 55, 58, 67, 82, 93, 102, 119, 126. Further, Defendant Ruffin and John Does #1-5, unidentified police officers with the SLMPD, prevented Plaintiff from leaving

the area used excessive force on Plaintiff, and/or unlawfully arrested Plaintiff. *Id. ¶¶* 10-17.

## ARGUMENT

---

[1]      Defendants' Motion for Judgment on the Pleadings refers the Court to a memorandum of law that does not address Plaintiff's pleadings but, instead, includes facts specific to *Nelson*. It appears this was done pursuant to Defendants' Motion for Consolidation, which has since been denied. Plaintiff objects to Defendants' failure to submit a full memorandum about the facts of the instant case.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). A plaintiff is only required to plead enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Courts must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). "Judgment on the pleadings is appropriate only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001).

In actions against law enforcement, "officers are entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiffs, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his actions were unlawful." *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012). "A plaintiff need not show that the 'very action in question ha[d] previously been held unlawful,' but he must establish that the unlawfulness was apparent in light of preexisting law." *Chambers v. Pennycook*, 641 F.3d 898, 908 (8th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640  (1987)). "In other words, we must ask whether the law at the time of the events in question gave the officers 'fair warning' that their conduct was unconstitutional." *Pennycook*, 641 F.3d at 908 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, (2002)). An officer cannot claim qualified immunity if she knew or reasonably should have known

that her action would violate the plaintiff's constitutional rights. *Engleman v. Deputy Murray*, 546

F.3d 944, 947 (8th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

**I.      Defendants Have Not Met Their Burden to Clearly Establish That They Are Entitled to Judgment as a Matter of Law.**

In their Motion, Defendants argue that some "basic facts" are not in dispute. *Nelson*, Doc.

No. 78 at 2. Yet, Defendants' recitation of facts is riddled with disputed, material facts, including

facts central to analysis of the reasonableness of Plaintiff's arrest. At times, Defendants state

purported facts without even citing to anything in the pleadings. For example, with no citation

whatsoever, Defendants boldly and falsely state, "Plaintiffs admit that there had been violence

earlier that night in connection with the group that was to be encircled." *Id.* at 5. In actuality, the

Amended Complaint states that property damage, not violence, occurred several blocks away,

three hours before Plaintiff's arrest, and Defendants arrested law-abiding civilians in the kettling,

including residents who merely lived in the area, people visiting businesses in the area, reporters,

documentarians, a homeless person, and an even an undercover SLMPD officer. Doc. No. 33 at ¶¶

45, 60, 69, 76.

As another example, Defendants state, without citation, "For a while, it appeared that the

crowd had dissolved, but around 9 or 9:30 p.m., it appeared to reconstitute itself." *Nelson*, Doc.

No. 78 at 3. Defendants also claim without citation to any evidence that "Plaintiffs admit that there

had been violence earlier that night *in connection with the group* that was to be encircled." *Id.* at

5. (emphasis added). Plaintiff believes the evidence will show that any persons who destroyed

property were arrested hours before the kettle. Defendants have not offered any evidence to support

their vague, baseless claim that the arrestees included vandals.[2] Defendants bring forth the idea of

a reconstituted crowd merely because it suits their narrative; it is not borne from the Amended

---

[2]      Even if Defendants could identify vandals in the crowd at Washington and Tucker at 11:30 pm, which they have yet to do 31 months after the arrests and after reviewing dozens of hours of video, that does not give them the right to arrest everyone present at the intersection.

Complaint or the accompanying exhibits. Defendants further state, without citation, "[I]nstead of dispersing, the crowd migrated to Tucker and Washington, where it remained, milling about and blocking the intersection." *Id.* at 3. Many of those arrested at Tucker and Washington, including Plaintiff, were not part of an organized crowd, were not blocking the intersection, and were simply residents or patrons of nearby businesses. Doc. No. 33 at ¶¶ 46, 60, 69, 76. Those arrested in the kettling either did not hear the order to disperse because they were not present or complied with Defendants' order by moving from Tucker and Locust to Tucker and Washington. As the Amended Complaint provides, the inaudible order did not specify how far civilians had to move in order to comply, even officers were unsure, and officers specifically directed civilians to Washington and Tucker. Doc. No. 33 ¶¶ 53, 55, 120-121, 133. In the 40 minutes between the dispersal order and the mass arrest, Defendants never indicated that the persons arrested had not complied with the dispersal order or given them any indication that moving to Washington and Tucker was not in compliance with their order.

At other times in their recitation, Defendants cite Exhibit G (Doc. No. 33-7) and offer their own interpretations of what can be seen on a video. Additionally, Defendants cite their own self-serving testimony from Exhibit E (Doc. No. 33-5), a transcript from a hearing involving the kettling at issue in this cause. For example, Defendants state, "[n]ew reports came to defendants Leyshock and Sachs of assaultive behavior by the crowd congregated around Tucker Blvd. and Olive St." *Nelson*, Doc. No. 78 at 3. Plaintiff strongly contests this allegation and believes it is untrue. This allegation is also directly controverted by Plaintiff's allegation that Defendant Sachs was unaware of any property damage in the area after 8:30 pm, and the fact that "[n]o property damage or violence was observed or reported by any officers after 8:30 p.m." *Id.* ¶ 118; Doc. No. 30-9 at 37.

The mere inclusion of these exhibits in the pleadings does not make all statements made during those hearings uncontested facts in the Amended Complaint. "Where a plaintiff attaches to

7

the complaint a document containing unilateral statements made by a defendant, where a conflict exists between those statements and the plaintiff's allegations in the complaint, and where the attached document does not itself form the basis for the allegations, Rule 10(c) 'does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact.'" *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008).

These are just a few inexhaustive examples of how Defendants have not met their burden to clearly establish that there are no material facts in dispute. In reviewing a judgment granted on the pleadings, not only must the Court view all the facts pleaded by Plaintiff as true, but the Court must make all reasonable inferences in Plaintiff's favor. *Ashley County,* 552 F.3d at 663. Defendants do not limit their arguments to the facts as pleaded by Plaintiff and explicitly ask the Court to examine evidence outside of the pleadings and make inferences against Plaintiff instead. Defendants are not entitled to judgment as a matter of law.

## II.   Defendants Are Not Entitled to Qualified Immunity Because the Intracorporate Conspiracy Doctrine Is Inapplicable to Plaintiff's Claims.

Defendants are not entitled to qualified immunity against Counts I-III and XII of the Amended Complaint because the intracorporate conspiracy doctrine does not apply to Plaintiff's § 1983 conspiracy claim and Defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno are not sued in Counts I, II, and XII on the basis of the conspiracy.

### A.   Defendants Do Not Have Qualified Immunity against Count III on the Basis of the Intracorporate Conspiracy Doctrine.

Defendants are not entitled to qualified immunity on Count III, Plaintiff's § 1983 conspiracy claim, because they violated Plaintiff's constitutional rights to be free from unreasonable seizure and excessive force, and those rights were clearly established in September 2017. A warrantless arrest is unreasonable and violates the Fourth Amendment if it is not supported by probable cause. *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (citing *Borgman v.*

*Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)). Moreover, the right to be "'free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures.'" *Nance v. Sammis*, 586 F.3d 604, 611 (8th Cir. 2009) (quoting *Samuelson v. City of New Ulm*, 455 F.3d 871, 877 (8th Cir. 2006)). The Eighth Circuit has specifically deemed qualified immunity to be inappropriate when the plaintiff alleges facts that defendant police officers conspired to wrongfully arrest him without probable cause and in retaliation for protected speech. *Small v. McCrystal*, 708 F.3d 997, 1010 (8th Cir. 2013).

Defendants banded together to violate Plaintiff's clearly established Fourth Amendment rights, yet Defendants argue that they did not know it was unconstitutional to work together to violate Plaintiff's rights because the Eighth Circuit has not ruled on the intracorporate conspiracy doctrine's applicability to § 1983 conspiracy claims. *Nelson,* Doc. No. 78 at 7-8. Defendants are making a patently absurd argument that, while it may be unconstitutional to violate Plaintiff's rights, they are entitled to qualified immunity because the Eighth Circuit has not expressly held that parties cannot *conspire* to violate Plaintiff's rights. Defendants do not cite any authority for this proposed, massive expansion of qualified immunity protection. Qualified immunity does not shield unconstitutional behavior simply because officers decide to violate citizens' rights as a group instead of violating citizens' rights individually.

Defendants offer no authority for the application of the intracorporate conspiracy doctrine to § 1983 conspiracy claims and rely solely on *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) and *Bowie v. Maddox,* 642 F.3d 1122 (D.C. Cir. 2011), conspiracy cases under 42 U.S.C. § 1985. Defendants offer no authority to establish that § 1983 and § 1985 conspiracy claims must be analyzed the same way. Moreover, the rationale in *Ziglar* suggests that the intracorporate conspiracy doctrine is inapplicable to § 1983 conspiracy claims.

In *Ziglar*, the U.S. Supreme Court notes that the intracorporate conspiracy doctrine is applicable to § 1985 conspiracy claims because "[w]hen two agents of the same legal entity make

an agreement in the course of their official duties . . . as a practical and legal matter their acts are attributed to their principal." *Ziglar*, 137 S. Ct. at 1867. Conversely, in § 1983 cases, "local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employee' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal citations omitted).

Further, in *Ziglar*, the Court found that communications amongst the defendants warranted the application of the intracorporate conspiracy doctrine because "the discussions were the preface to, and the outline of, a general and far-reaching policy." 137 S. Ct. at 1867. In the present case, Defendants' coordination of Plaintiff's arrest, and the force against Plaintiff was not a result of general or far-reaching policy. These constitutional violations resulted from specific plans to arrest people present at the intersection of Tucker and Washington on the night of September 17, 2017.

In fact, the Eighth Circuit has held that, while a government entity generally cannot conspire with itself under § 1985, there is an exception if its agents acted "beyond the scope of their authority" at the time of the conspiracy. *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005) (citing *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir.1987). Several courts have held that allegations of police misconduct or excessive force are not protected because the purpose of the intracorporate conspiracy doctrine is to shield corporations from liability for "routine, collaborative business decisions,"; finding that "conspiracies and cover-ups are not the product of routine police department decisions-making." *Pinell v. City of Gerald, Mo.,* 2018 U.S. Dist. LEXIS 45957, at *24 (E.D. Mo. Mar. 21, 2018); *Golden v. Moutray,* 2018 U.S. Dist. LEXIS 62828, at *11 (E.D. Mo. Apr. 13, 2018).

Courts in this circuit have repeatedly denied motions to dismiss based on the intracorporate conspiracy doctrine in § 1983 cases. *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 897 (E.D. Mo. 2017); *Golden,* 2018 U.S. Dist. LEXIS 62828, at *11; *Anzaldua v. Northeast Ambulance &*

*Fire Prot. Dist.,* 2014 U.S. Dist. LEXIS 14568, at *8 (E.D. Mo. Feb. 5, 2014) (aff'd in part, rev'd in part on other grounds and remanded, 793 F.3d 822 (8th Cir. 2015)). Courts have held that, because of the standard of review on motions to dismiss and, therefore, motions for judgment on the pleadings, "the interests of justice are not best served by considering the intracorporate conspiracy doctrine at this pre-evidentiary stage" in § 1983 conspiracy cases. *Golden*, 2018 WL 1784395 at *11 (citing *Powers*, 229 F. Supp. 3d at 904–05; *Anzaldua*, 2014 WL 46234, at *8.

Here, Defendant Officers' behavior violated Plaintiff's clearly established rights. Even assuming *arguendo* that the doctrine applies to § 1983 conspiracy, Defendant Officers cannot be considered to have been acting within the scope of their employment or conducting routine activities, making the intracorporate conspiracy doctrine inapplicable to the facts of this case.

Quite simply, the Defendants are trying to argue, without authority, that an officer deserves qualified immunity for an act, which if done by himself would clearly not render him immune, merely because said officer performs the unconstitutional act with his fellow officers. This is simply untrue. And, as this Court already held in its earlier rulings, given the early stage of this litigation and the lack of discovery,  the Court should defer analysis of this doctrine to the summary judgment stage.  For these reasons, Defendants' Motion as to Count III should be denied.

**B.      Defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno, Do Not Have Qualified Immunity against Counts I, II, and XII on the Basis of the Intracorporate Conspiracy Doctrine.**

Strangely, Defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno argue that they have qualified immunity for Counts I, II, and XII (unreasonable seizure, First Amendment retaliation, and excessive force, respectively) under the intracorporate conspiracy doctrine. *Nelson*, Doc. No. 78 at 8. However, Plaintiff does not allege that Defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno (hereinafter "Defendant Supervisors") are

liable in Counts I, II, and XII on the basis of conspiracy.[3] Defendants' Motion for Judgment on Counts I, II, and XII as to Defendant Supervisors, on the basis of the intracorporate conspiracy doctrine, should be denied.

### III.   Defendants Are Not Entitled to Qualified Immunity Because Plaintiff's Rights Are Clearly Established.

Defendants are not entitled to qualified immunity against Counts I, II, or XII because Plaintiff had a clearly established right to be free from unreasonable seizure in September 2017, and Plaintiff had a clearly established right to be free from excessive force in September 2017.

#### A.   Plaintiff Had a Clearly Established Right to be Free from Unreasonable Seizure.

To gain the protection of qualified immunity, an officer must have at least arguable probable cause for the seizure. *Ulrich*, 715 F.3d at 1059 (citing *Borgman*, 646 F.3d at 523). Probable cause exists "'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* Arguable probable cause exists when "'an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Id.* "'[C]learly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action ... from assuming that proper procedures ... have already been followed.'" *Perry v. Woodruff County Sheriff Dep't by & through Barker*, 858 F.3d 1141, 1146 (8th Cir. 2017) (quoting *White v. Pauly*, 137 S.Ct. 548, 552 (2017)).

Defendants' cited support for the reasonableness of the arrest is unpersuasive.[4] Defendants

---

[3]      Section IV, below, addresses Defendant Supervisors' liability in Counts I, II, and XII on the basis of their individual actions, rather than conspiracy.

[4]      Defendants cite *Burbridge v. City of St. Louis, Missouri*, 4:17-CV-02482-SRC, 2019 WL 7020183 (E.D. Mo. Dec. 20, 2019), arguing that the *Burbridge* court found the officers qualifiedly immune to the Burbridges' unreasonable seizure claim on a motion for summary judgment. *Nelson,* Doc. No. 78 at 11. The *Burbridge* court found "uncontroverted evidence" that the officers had probable cause or arguable probable cause to arrest the Burbridges, WL 7020183 at *6, based on a very different factual record that which Plaintiff has and will put forward in this case. The *Burbridge* record included key factual admissions by the Burbridges that Plaintiffs will vigorously contest. Plaintiff's record will

primarily rely on *Bernini,* in which the Eighth Circuit analyzed the difficult question of probable cause analysis in the context of a mass arrest and held the Fourth Amendment requires that, "the officers have grounds to believe all arrested persons were a part of the *unit* observed violating the law.'" 665 F.3d at 1003 (emphasis in original). In *Bernini*, officers were positioned to block protestors from marching into downtown St. Paul, Minnesota. 665 F.3d at 1001. At one of the intersections, 100 protestors stood across the sidewalk from that intersection's eleven officers who had just received reports that the group was involved in unlawful activity. *Id.* Fifteen protestors moved towards the officers and ignored the officers' orders to move back, only retreating after the officers fired rubber pellets. *Id.* After the fifteen protestors rejoined the larger group, members of the larger group propelled rocks and feces at the officers. *Id.*

Additional protestors joined the march as the officers pushed the protest away from downtown, and, by the time the officers had an opportunity to "gather the crowd," the group of prostestors was nearly 400-strong. *Id.* at 1001.After providing clear instruction over a loudspeaker that all in the area were under arrest, the officers directed the group to sit down and put their hands on their heads. *Id.* The officers immediately released 200 individuals whom they determined were not part of the earlier confrontation; the officers took the remaining 200 persons into custody. *Id.* Although the officers later determined that some of the 200 people arrested were not present at the earlier confrontation, the court held that the officers had arguable probable cause as to those people due to a reasonable, yet mistaken, belief that they had whittled out all of the innocent bystanders. *Id.* at 1005. The court further concluded that a reasonable officer would believe the 200 arrestees were acting as a unit because, after the violent confrontation at the intersection, the group remained

---

include substantial evidence to controvert the admissions upon which the *Burbridge* court relied. Defendants' arguments are more suited for the summary judgment stage.

intact, the group chanted in unison, and the group continued to move together as the police moved them away from downtown. *Id.* at 1003-04.

In the present case, Defendants identify no facts evidencing that Defendants observed those arrested in the September 17, 2017 kettling acting as a unit. Taking the evidence in the light most favorable to Plaintiff, the citizens arrested in the kettle did not act as a unit to violate the law. Defendants made dispersal orders several blocks away and no less than 45 minutes before the kettling, making it unreasonable to assume those arrested in the kettle were cognizant of any potentially unlawful acts. *Id. See White v. Jackson*, 865 F.3d 1064, 1075–76, 1079-80 (8th Cir. 2017). Unlike the arrestees in *Berini*, those arrested in the September 17, 2017 kettling, were not a unit throwing rocks or feces at police or engaging in any violence or disobedience. The instant arrestees were not chanting in unison. The instant arrestees were not part of an organized crowd. Many of the instant arrestees were simply residents or patrons of businesses on Washington Avenue who were completely uninvolved in the evenings' earlier events. Unlike the officers in *Berini*, Defendants arrested *everyone* near Washington and Tucker and made no attempt to whittle down the group of arrestees to the people they believed had engaged in unlawful conduct. *See Carr v. Dist. of Columbia*, 587 F.3d 401, 407 (D.C. Cir. 2009) (holding particularized probable cause requires officers to "have grounds to believe all arrested persons were a part of the unit observed violating the law."). *See also Barham v. Ramsey*, 434 F.3d 565, 575 (D.C. Cir. 2006) (finding no evidence arrestees were acting as a unit when there was a significant time lag between the criminal acts and the arrests, civilians flowed freely in and out of the area, and the officers made no attempt to distinguish between the illegal actors and law-abiding individuals). More than two and a half years later, the City of St. Louis has not identified or charged a single person arrested in the kettling for any property destruction or violent acts occurring on September 17, 2017.

Without particularized probable cause to support Plaintiff's arrest or a reasonable belief that citizens arrested in the kettling were acting as a unit observed violating the law, Defendants

did not have probable cause to arrest Plaintiff. Thereby, Defendants seized Plaintiff without probable cause in violation of Plaintiff's clearly established Fourth Amendment rights.

Defendants argue that, even if Defendants Leyshock and Sachs mistakenly believed they had probable cause, the mistake was reasonable because they believed that it was "important to control a chaotic and potentially combative scene."[5] *Nelson*, Doc. No. 78 at 11. But in her decision granting a temporary injunction in another case concerning the September 17, 2017 kettling, *Ahmad v. City of St. Louis*, Judge Catherine Perry reviewed and analyzed video taken by Jonathan Ziegler, one of the other kettling arrestees, in the forty-five minutes up to and including the mass arrest and determined:[6]

> Video footage of the intersection taken by Jonathan Ziegler around this time period and introduced as Plaintiffs' Exhibit 10 shows police continuing to block traffic with police cars and bike officers. It also shows some vehicular traffic moving through the intersection after the final dispersal order was given. A group of four to five individuals can be seen sitting on Tucker, and scattered individuals are, at times, walking or standing in the closed streets. This video does not show a large crowd congregating in the streets. The video shows some people shouting taunts at police officers. No violent activity by protesters can be observed on the video. Some people are wearing or carrying masks and/or goggles, but most are not. The scene appears calm and most people appear relaxed.

Doc. No. 33-9 at 10-11.

People were simply milling about in small groups at various areas in and around the intersection. The property damage occurred many hours before the mass arrest and at a different location, Doc. No. 33 at ¶¶ 45, 118, and Defendants cite no reason for the officers to believe those arrested were involved or the property damage would resume.

---

[5]   Defendants cite *Kelsey v. Ernst*, 933 F.3d 975 (8th Cir. 2019) (en banc) and *Rudley v. Little Rock P.D.*, 935 F.3d 651 (8th Cir. 2019), without pincites, for the purported purpose of establishing Defendants Leyshock and Sachs's reasonable beliefs that they had probable cause to arrest everyone at Washington and Tucker. *Nelson*, Doc. No. 78 at 11. However, those cases concern the reasonableness of force, not seizure. *Kelsey*, 933 F.3d 977; *Rudley*, 935 F.3d at 652.

[6]   Judge Perry reviewed and analyzed Exhibit G (Doc. No. 30-7) of the Amended Complaint.

Defendants also argue that, even if Plaintiff's arrest was not supported by probable cause or arguable probable cause, Defendants Boyher, Jemerson, Karnowski, and Rossomanno reasonably relied on their orders from Defendants Leyshock and Sachs. *Nelson*, Doc. No. 78 at 11. Defendants ignore the fact that Defendants Boyher, Jemerson, Karnowski, and Rossomanno were present at the time of Plaintiff's arrest and, therefore, could not simply "'assum[e] that proper procedures ... ha[d] already been followed.'" *Perry*, 858 F.3d at 1146 (quoting *Pauly*, 137 S.Ct. at 552). Defendants' Motion should be denied as to Count I of the Amended Complaint.

**B.  Plaintiff Had a Clearly Established Right to be Free from Excessive Force.**

"Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a *lawful* seizure." *Pennycook*, 641 F.3d at 907 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (emphasis added). Courts "look to the specific circumstances, such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Peterson*, 754 F.3d at 600. (quoting *Graham*, 490 U.S. at 396). "'[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.'" *Small*, 708 F.3d at 1005 (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009)). "The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied." *Pennycook*, 641 F.3d at 907.

Although non-John Doe discovery has yet to begin and Plaintiff has not yet been obliged to produce medical evidence to establish the severity of their injuries, Defendants have argued that Plaintiff's injuries are *de minimus*. *Nelson*, Doc. No. 78 at 13. Defendants further argue that they are entitled to qualified immunity "because, at the time of the mass arrest (and still) it was not

clearly established that pepper spray, handcuffing, or arm twisting or dragging were anything other than de minimis uses of force." *Id.* This is incorrect.

First, since at least 2006, it has been the law in the Eighth Circuit that an officer violates the Fourth Amendment when he subdues and handcuffs a suspect he knows was not resisting or threatening officers. *Perry*, 858 F.3d at 1146 (8th Cir. 2017) (citing *Smith v. Kansas City Police Dep't*, 586 F.3d 576, 582 (8th Cir. 2009)). Second, in *Burnikel v. Fong*, the Eighth Circuit found that it was clearly established, by at least 2013, "'that when a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment.'" 886 F.3d 706, 711–12 (8th Cir. 2018) quoting *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014)). *See White v. Jackson*, 865 F.3d 1064, 1080 (8th Cir. 2017) (where the Eighth Circuit held that kicking and punching a restrained suspect was objectively unreasonable).

Third, in *Pennycook*, decided in 2011, the Eighth Circuit held that *de minimus* injury *is* sufficient to establish the use of excessive force. 641 F.3d at 908-909. *See Perry*, 858 F.3d at 1146. Plaintiff had a clearly established right at the time of Defendants' unconstitutional conduct. *See Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (where the Eighth Circuit found that a small cut above the plaintiff's eyelid and small scrapes on the plaintiff's knee and calf constituted excessive force). *See also Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995) (where the Eighth Circuit found that bruising and facial lacerations constituted excessive force).

While the Eighth Circuit does admittedly state that *de minimus* injury may not be sufficient to establish a claim for excessive force in *Robinson v. Hawkins*, the *Robinson* court allowed that there are circumstances where "a *de minimis* injury does not preclude a claim of excessive force." 937 F.3d 1128, 1136 (8th Cir. 2019). Moreover, *Robinson* was not decided until two years after September 2017. In September 2017, Defendants knew or should have known that the force they used on Plaintiff was unconstitutional, even if they believed that force caused *de minimus* injury.

17

Supposing the Court did apply *Robinson* as broadly as Defendants allege it applies, the *Robinson* facts are not analogous to Plaintiff's injuries. In *Robinson*, the officers shoved the plaintiff and handcuffed her. 937 F.3d at 1136. "The injuries Robinson sustained as a result of the force were fairly minor, including some pain and bleeding from the wrists as a result of being handcuffed and pain in her shoulders from being pushed." *Id.* In the present case, Plaintiff alleges much more intrusive injuries, including those resulting from Defendants' punitive pepper spray deployments.

The Eighth Circuit has also found short bursts of pepper spray unreasonable. In *Tatum v. Robinson*, the plaintiff attempted to steal from a retailer in April 2014. 858 F.3d 544, 546 (8th Cir. 2017). In *Tatum*, the officer approached the plaintiff and told him he was under arrest and ordered him to put his hands on a clothing rack. *Id.* The plaintiff did not comply and began to yell instead. *Id.* The officer warned the plaintiff that he would pepper spray the plaintiff if the plaintiff did not calm down; fourteen seconds later, the officer sprayed the plaintiff for "one second." *Id.* The Eighth Circuit determined that, under *Graham*, the pepper spraying constituted excessive force, given that the plaintiff was not suspected of a severe crime, the plaintiff was not an immediate threat to anyone's safety, and the plaintiff was not actively resisting arrest. *Id.* at 548-49. Even if the officer could have used "*some* force" given the plaintiff's noncompliance, the court found that it was unreasonable for the officer to use pepper spray immediately, as it is "significant force" that causes "more than temporary pain." *Id.* The Eighth Circuit held that force was "least justified" against the plaintiff because the plaintiff was "a non-resisting, non-fleeing individual suspected of a completed, non-violent misdemeanor." *Id.* at 549.[7]

In the present case, taking the facts in the light most favorable to Plaintiff, Defendants subjected Plaintiff to "significant force" even though Plaintiff was a person against whom force

---

[7]     Ultimately, the *Tatum* court granted the officer qualified immunity after concluding that the plaintiff's right was not clearly established at the time. *Id.* at 551. Post *Tatum*, a reasonable officer would know that pepper spraying compliant, non-fleeing indivuduals suspected of low-level misdemeanors is unreasonable.

was "least justified." Because Plaintiff's arrest was not supported by probable cause, Defendants were not authorized to use *any* force against Plaintiff, including the application of hand restraints. By pepper spraying Plaintiff without warning and despite his compliance, Defendants violated Plaintiff's clearly established rights. By dragging Plaintiff across the pavement and applying zip ties tight enough to cause lasting pain, Defendants violated Plaintiff's clearly established rights. Every *Graham* factor weighed against the force Defendants exacted on Plaintiff: Plaintiff was not suspected of a severe crime, Plaintiff was not a threat to anyone's safety, and Plaintiff was not actively resisting or attempting to flee. Defendants' Motion as to Count XII should be denied.

**IV.    Defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno, Do Not Have Qualified Immunity against Count XII Because They Personally Violated Plaintiff's Clearly Established Rights or Ratified or Ignored Violations by Their Subordinates.**

It is well established in the Eighth Circuit that supervisors are liable where they personally participated in a constitutional violation, or when they knew about unconstitutional conduct and facilitated, approved, condoned or turned a blind eye to such conduct. *Wagner v. Jones*, 664 F.3d 259 (8th Cir. 2011) (citing *Ottman v. City of Independence*, Mo., 341 F.3d 751, 761 (8th Cir. 2003) (citations and internal quotes omitted); *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996) (tacit authorization or failure to sufficiently supervise the offending actions of an employee sufficient for supervisor to be liable). Further, a supervisor can be found liable under § 1983 "for deliberate indifference if he is aware of 'a substantial risk of serious harm,' even if he is not aware that the harm has, in fact, occurred." *Kahle v. Leonard,* 477 F.3d 544, 551–52 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, (1994)).

Defendant Leyshock approved the plan to restrict the movements of individuals who were attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present. Doc. No. 33 at ¶¶ 10, 49, 57. Defendant Sachs and Defendant Leyshock decided to effectuate the mass arrest at Washington and Tucker. *Id.* at 52; Doc. No. 33-5 at 70. Defendant Sachs developed the plan to amass police officers in such a manner that citizens would be unable

to exit, and Defendant Leyshock approved the plan. Doc. No. 33-5 at 70. Defendants Boyher, Jemerson, Karnowski, and Rossomanno were all physically present at the illegal kettling location and were responsible for directing the officers under their command. Doc. No. 33 at ¶¶ 11, 13-15, 52, 55, 58, 82, 93, 102, 126.

Defendant Rossomanno was responsible for giving the vague dispersal order that was used as the questionable basis for the illegal arrests of peaceful citizens *Id.* ¶¶ 93, 119-120. Defendants Boyher and Karnowski directed the officers under their command to use force against the peacefully assembled individuals. *Id.* ¶ 82. Defendants Boyher, Jemerson, Karnowski, and Rossomanno observed SLMPD officers as they pepper sprayed and beat compliant citizens but did nothing to intervene. *Id.* ¶¶ 11, 13-15, 52, 55, 58, 82, 93, 102, 126. Ultimately, Defendant Ruffin and John Does #1-5, officers in Defendant Supervisors' command, prevented Plaintiff from leaving the area, used excessive force on Plaintiff, and unlawfully arrested Plaintiff. *Id.* ¶¶ 10-17.

Plaintiff sufficiently pleaded facts that, accepted as true, state claims against Defendant Supervisors for their personal violations of Plaintiff's First, Fourth, and Fourteenth Amendment rights, as they were present and either directing or observing the constitutional violations committed by the officers under their command. The Amended Complaint presents sufficient facts that Defendant Supervisors knew about unconstitutional conduct and facilitated, approved, condoned, or turned a blind eye to such conduct. *Wagner*, 664 F.3d at 259. At the least, these facts create reasonable inferences in favor of Plaintiff, such that Count XII should not be dismissed as to Defendant Supervisors at the pleadings stage.

## CONCLUSION

For the reasons stated above, Defendants are not entitled to qualified immunity on Counts I-III and XII of the Amended Complaint. Plaintiff respectfully requests the Court deny Defendants' Motion in full.

Date: April 16, 2020

Respectfully submitted,

KHAZAELI WYRSCH LLC

/s/ Kiara N. Drake
Kiara Drake, 67129MO
James R. Wyrsch, 53197MO
Javad Khazaeli, 53735MO
911 Washington Avenue, Suite 211
Saint Louis, MO 63101
(314) 288-0777
(314) 400-7701 (fax)
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com
kiara.drake@kwlawstl.com


ARCHCITY DEFENDERS, INC.

Blake A. Strode, #68422(MO)
Michael-John Voss, #61742(MO)
Maureen G. V. Hanlon, #70990(MO)
John M. Waldron, #70401(MO)
440 N. Fourth Street, Suite 390
Saint Louis, MO 63102
855-724-2489
bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
mhanlon@archcitydefenders.org
jwaldron@archcitydefenders.org


Attorneys for Plaintiff