UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DILLAN NEWBOLD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-cv-1572- HEA |
| | ) |
| CITY OF ST. LOUIS, etc., et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITI0N TO MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Plaintiff seeks leave to file a third amended complaint. ECF 88. For the following reasons, defendants oppose the granting of leave to file the third amended complaint as proffered. ECF 88-1.

Defendants are well aware that granting leave to amend under F.R.Civ.P. 15(a) is a matter entrusted to this Court's discretion. The governing standard has been laid down by the Supreme Court in *Foman v. Davis,* 371 U.S. 178, at 182 (1962): leave will be granted unless the opposing party can show undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. In this context, "futility" generally connotes that the proposed amended complaint fails to meet the requirements to state a claim for relief. E.g., *Zutz v. Nelson,* 601 F.3d 842 (8th Cir. 2010). Notably, the court's discretion to deny leave to amend is "particularly broad" when the court has previously granted leave to amend. E.g., *Ward v. Corizon,* 2020 U.S.App.LEXIS 15341 (9th Cir. 2020).

In the case at bar, the proposed amended complaint introduces several major new or altered claims or theories.  First, the amended complaint seeks to add several defendants who are explicitly claimed to have unlawfully seized or used force on plaintiff, Officers Busso, Coats and Burle.  ECF 88-1, ¶¶18, 159-60.  Second, the amended complaint attempts to state a claim against some 52 supervisory police officers for a claimed "failure to intervene," broadly asserting that all 52 officers could and should have prevented alleged excessive force used against plaintiff.  ECF 88-1, count XIII; also ¶¶60ff.; 80ff. Third, the amended complaint asserts a novel state law theory of vicarious liability against the acting police commissioner at the time (LTC O'Toole), and the then acting City director of public safety (Ms. Deeken), alleging a completely unsupported claim derived from the St. Louis City Charter.  ECF 88-1, count XI.   Finally, and most importantly, the proposed amended complaint executes a procedural about-face by dropping all exhibits, including video and the extensive portions of the record in the *Ahmad* case.

At the outset, the current defendants would not oppose an appropriate amendment to join in count XII those additional defendants who are alleged personally to have applied excessive force to plaintiff, namely proposed additional defendants Busso, Coats and Burle.  While by no means conceding the merit of such claims, it cannot be gainsaid that an amendment to replace John Doe defendants with identified defendants has been the whole point of the extensive discovery in this case to date--and is a reason to terminate further John Doe discovery and dismiss John Doe defendants, as argued elsewhere [ECF 89].

However, the existing defendants can and do oppose the third amended complaint in its current form on grounds of futility and prejudice.

**1.    The proposed amended complaint is futile, insofar as it alleges unlawful arrest, excessive force against any defendant who had no personal contact with plaintiff,**

2

**and conspiracy, because it wholly fails to state viable claims under §1983 against the current individual defendants, as explicated in defendants' motion for judgment on the pleadings.**

As the Court is aware, the individual defendants in this action have filed a motion for judgment on the pleadings. ECF 70. The defendants see no point in rehashing the arguments in support of that motion; rather, defendants submit that the memoranda in support of and in opposition to the motion fully explore the reasons why no claim of unlawful arrest is stated against them, and why, at a minimum, they are entitled to qualified immunity on the federal claims herein. See ECF 70-1, 79, 82, and 83. Defendants emphasize that Judge Clark's opinion in *Burbridge v. City of St. Louis,* 2019 U.S.Dist.LEXIS 218483 (E.D.Mo. 2019), is entitled to deference on the issue of unlawful arrest in the identical incident that is the subject of this action. Moreover, the new "failure to intervene" claim (count XIII) does not state a claim plausible on its face. Rather, it is an attempt to impose vicarious liability on any supervisor on the scene at the time of plaintiff's arrest, whether the supervisor had anything to do with plaintiff or not. The allegations of failure to intervene are adequately addressed in defendant's papers supporting judgment on the pleadings, demonstrating the insufficiency of the claim. Under the circumstances, denial of leave to file the third amended complaint would be proper, in that the amendments would be futile. Cf. *Amrine v. Brooks,* 522 F.3d 823 (8th Cir. 2008).

**2.     The proposed amended complaint would unfairly prejudice the individual defendants because it constitutes a transparently obvious attempt to impede those defendants' ability to mount a qualified immunity defense as to the claims of unlawful arrest and excessive force.**

In their motion for judgment on the pleadings, the individual defendants relied heavily on the exhibits that were included in the second amended complaint, including video and much of the transcript of the preliminary injunction hearing in *Ahmad*. ECF 33-1 to 33-9. Defendants acknowledge an element of irony in the procedural posture now confronting the Court: previously, plaintiff vigorously defended the inclusion of those exhibits. Now, however, positions are reversed. Plaintiff apparently has decided that it was unwise to import the *Ahmad* record wholesale into this action, so the proposed third amended complaint omits all exhibits, confining itself to allegations concerning the district court's preliminary injunction findings and conclusions. ECF 88-1, ¶¶123ff. Defendants now have relied on the whole of the second amended complaint, including exhibits, in seeking to mount their qualified immunity defense.

There is little doubt that, if the Court grants leave to file the third amended complaint, the plaintiff will argue that the motion for judgment on the pleadings is moot, and that defendants will not be able to rely on the exhibits to the abandoned pleading in support of a future motion to dismiss. Whether or not such arguments are correct, there can be no doubt that granting leave to file the third amended complaint without first ruling on the motion for judgment on the pleadings will have a deleterious effect on the individual defendants' ability to assert their qualified immunity defense to the claims of unlawful seizure and excessive force.[1]

It bears emphasis that the defense of qualified immunity is not just an affirmative defense, but is an immunity from suit. The Supreme Court has repeatedly instructed that the defense is to be resolved at the earliest practicable stage of a case, since part of the purpose of the defense is to forefend the burdens of discovery that will otherwise be inflicted on an individual

---

[1] Because immunity to an intracorporate conspiracy claim is apparent from the face of all versions of the complaints, that defense as to count III will not necessarily be impaired, but its resolution undoubtedly will be delayed.

4

government officer defendant. E.g., *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Behrens v. Pelletier,* 516 U.S. 299 (1996); see also *Bartlett v. Fischer,* 972 F.2d 911 (8th Cir. 1992).

While plaintiff may now regret the wholesale importation of *Ahmad* record materials into the pleadings, plaintiff should not now be permitted to dodge the early resolution of qualified immunity by the device of recalibrating those pleadings. The courts have disapproved of such tactical maneuvers to thwart a meritorious defense, particularly of qualified immunity. See *Doe v. Cassel,* 403 F.3d 986 (8th Cir. 2005)(affirming denial of leave to file amended complaint where delay impeded defendants' ability to mount qualified immunity defense; earlier complaint had broad-brush allegations without specification of conduct of individual defendants); *Earlie v. Jacobs,* 745 F.2d 342 (5th Cir. 1984)(affirming denial of leave to amend where plaintiff was attempting to evade nonjury trial); *Plumley v. Allstate Ins. Co.,* 772 F.Supp. 922 (S.D.W.Va. 1991)(denying leave to amend where proposed amendment designed to thwart limitations defense); cf. *Amrine v. Brooks,* supra.

Current defendants submit that the Court should deny the motion for leave at this time, rule on the pending motion for judgment on the pleadings, and then reassess adding the specific individuals alleged to have had contact with plaintiff.

**3.     The proposed amended complaint would prejudice defendant City, because it would drag into court more than 50 supervisory police officers who had no direct personal connection with plaintiff and who are demonstrably immune to plaintiff's claims.**

Plaintiff now seeks to vastly expand the universe of defendants in an effort to spin a new theory of "failure to intervene" liability. The addition of this platoon of new defendants, whose identities have been far from secret, will impose considerable burdens on defendant City and its police division without materially advancing the litigation of plaintiff's only real claim:

5

subjection to excessive force by specific defendants. It is no small thing for 50 police supervisors to be pulled from their regular duties in order to accomplish discovery that will only show that none of them had anything to do with plaintiff. Moreover, in regard to this theory, there has been unnecessary delay in asserting it. The identities of all supervisors on the scene were discoverable at the outset of this case, and the essence of the theory of liability was pleaded in the second amended complaint. See ECF 33, ¶¶93, 126. Plaintiff's proposed expansion of the ranks of defendants in this action should be rejected.

**4.    The proposed amended complaint would prejudice defendant City by injecting a completely novel and untested theory of state law liability of City executive officers into this action, when this Court's supplemental jurisdiction should not be exercised over such a claim.**

In count XI of the proposed amended complaint, plaintiff invoke a provision of the St. Louis City Charter to seek to impose vicarious liability on two new defendants, then acting police commissioner O'Toole and acting direct of public safety Deeken. The Charter provision (of which this Court can take judicial notice, Fed.R.Ev. 201) provides in pertinent part: "Each head of a department, office or division shall be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself." Granting leave to add this claim would be futile and prejudicial to the City, which would be faced with litigating a novel question of state law in the wrong court.

First, the quoted language applies only if an officer or employee is "appointed" by the department or division head. Plaintiff do not allege that defendant Deeken appointed any officer involved in the mass arrest at issue. As a matter of law, the police commissioner is the "appointing authority" of officers in the division of police, Charter, art. XIII, §15, but there is no

6

allegation that, in fact, defendant O'Toole "appointed" any of the officers named in the amended complaint. At the time, as the amended complaint alleges, both O'Toole and Deeken were merely "acting" as commissioner and director.

Second, the City is wholly without power, by Charter or otherwise, to create causes of action or impose liabilities not authorized by state law. *Yellow Freight Systems, Inc. v. Mayor's Comm. on Human Rights,* 791 S.W.2d 382 (Mo.banc 1990). The liability of government officers for acts of their subordinates is limited by state law. *Davis-Bey v. Mo. Dept. of Corrections,* 944 S.W.2d 294 (Mo.App.W.D. 1997). The City has no power to enlarge that liability, even with regard to its own officers, since in doing so it imposes a personal liability not recognized by state law.

Third, the Charter provision, in force since 1914, has never been held to impose vicarious liability *per se* on appointing authorities in City government. The absence of any reported case lending color to plaintiff's reading of the Charter provision militates strongly against construing it as a blanket imposition of *respondeat superior* liability for appointing authorities. However, the novelty of the theory raises an issue of construction of the City Charter, peculiarly a matter for the state courts. Thus, the very novelty of count XI also warrants dismissal in accordance with 28 U.S.C. §1367(c)(1). See *Gregory v. Dillard's Inc.,* 565 F.3d 464, 477 (8th Cir. 2009)(*en banc*); *Birchem v. Knights of Columbus,* 116 F.3d 310 (8th Cir. 1997).

Finally, the City is also without power to amend §1983. The Supreme Court has been emphatic that §1983 does not import vicarious liability. To allow a City to amend, in effect, an act of Congress would result in local governments overriding Congress and the Supreme Court in a matter of federal law. This is analogous to a question of preemption. Congress alone is invested with the power to enforce the Fourteenth Amendment by §5 of the Amendment. State,

7

and, *a fortiori¸* municipal efforts to enforce the Fourteenth Amendment cannot conflict with either the Amendment or Congress' enforcement measures. Cf. *Richmond v. J. A. Croson Co.,* 488 U.S. 469 (1989).

The meaning and application of the Charter section in question has *never* been determined by a state appellate court, and defendants cannot find that a state trial court has ever done so, either. If this Court considers that *Yellow Freight* does not conclusively preclude plaintiff's theory, then it must venture into the realm of home rule law in Missouri. There are few issues in Missouri law that are more complex than the authority of constitutional charter cities to alter or expand general state law. Countless Missouri cases have wrestled with drawing the line of demarcation between "home rule" powers and state law preemption. *Yellow Freight*, supra, is just one of many cases illustrating this point. See also *Coop. Home Care v. City of St. Louis,* 514 S.W.3d 571 (Mo.banc 2017) and cases cited therein. Whatever the proper construction of the cited Charter provision may be, whether it can be construed as count XI asserts is an unsettled state law issue; and, if it is construed as plaintiff desires, and if *Yellow Freight* does not compel the conclusion that it is preempted, then it also imports a further, complex question of state law.

Another reason militating in favor of rejection of the amended complaint as to the novel Charter liability theory is that such a claim is not ripe unless and until plaintiff prevails on the claims against defendants O'Toole and Deeken's subordinates. If and when a judgment against any of the other individual defendant police officers is entered, plaintiff can seek, if necessary, to enforce that judgment against defendants O'Toole and Deeken in state court. That is the proper mechanism by which to determine the construction of the City Charter. For reasons of comity

and federalism, at a minimum, this Court should decline to exercise supplemental jurisdiction over count XI.  Cf. *Railroad Comm. of Texas v. Pullman Co.,* 312 U.S. 496 (1941).

Conclusion

For the foregoing reasons, leave to file the third amended complaint should be denied and the Court should proceed to judgment on the pleadings as to the existing defendants, without prejudice to proffering an amended complaint as to count XII, joining identified officers alleged to have had direct contact with plaintiff.

>
> Respectfully submitted,
> JULIAN L. BUSH
> CITY COUNSELOR
> /s/ Robert H. Dierker
> Robert H. Dierker 23671(MO)
> Associate City Counselor
> dierkerr@stlouis-mo.gov
> Brandon Laird 65564(MO)
> Associate City Counselor
> Abby Duncan 67766(MO)
> Associate City Counselor
> Amy Raimondo 71291(MO)
> Assistant City Counselor
> 1200 Market St.
> City Hall, Rm 314
> St. Louis, MO 63103
> 314-622-3361
> Fax 314-622-4956
>
> ATTORNEYS FOR DEFENDANTS