UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DILLAN NEWBOLD,                          )
                                         )
          Plaintiff,                     )
                                         )
v.                                       )          CASE NO. 4:18CV1572 HEA
                                         )
CITY OF SAINT LOUIS, MISSOURI,           )
et al.,                                  )
                                         )
          Defendants,                    )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Third

Amended Complaint, [Doc. No. 111].  Plaintiff opposes the Motion, which has

been fully briefed.  For the reasons set forth below, the Motion to Dismiss is

denied in part and granted in part.

### Facts and Background[1]

This and several other cases filed in this District share a general set of facts

regarding the actions of St. Louis Metropolitan Police Department ("SLMPD")

officers during peaceful protests following the September 15, 2017 verdict in *State*

*of Missouri v. Stockley*.  *See Ortega v. City of St. Louis*, No. 4:18 CV 1576 DDN,

---

[1] The recitation of facts is taken from Plaintiff's Third Amended Complaint and is set forth for
the purposes of the pending motion to dismiss.  The recitation does not relieve any party of the
necessary proof of any stated fact in future proceedings.

2021 WL 3286703 (E.D. Mo. Aug. 2, 2021);  *Aldridge v. City of St. Louis, Mo.*,

No. 4:18-CV-1677 CAS, 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019); *Laney v.*

*City of St. Louis, Mo.*, No. 4:18-CV-1575 CDP, 2019 WL 2423308, (E.D. Mo.

June 10, 2019); *Laird v. City of St. Louis, Mo.*, No. 4:18-CV-1567 AGF, 2019 WL

2647273 (E.D. Mo. June 27, 2019); *Alston v. City of St. Louis, Mo.*, No. 4:18-CV-

1569 AGF, 2019 WL 2869896 (E.D. Mo. July 3, 2019); *Thomas v. City of St.*

*Louis, Mo.*, No. 4:18-CV-1566 JAR, 2019 WL 3037200 (E.D. Mo. July 11, 2019).

Those facts, as well as the allegations specific to Plaintiff Dillan Newbold,

are as follows:

In 2018, Plaintiff commenced this action after the St. Louis Metropolitan

Police Department ("SLMPD") arrested him and others on September 17, 2017.

The Third Amended Complaint alleges various claims under 42 U.S.C. § 1983

(Counts I, II, III, IV, XII, and XIII) and under Missouri state law (Counts V, VI,

VII, VIII, IX, X, XI, and XIV). Plaintiff has previously voluntarily dismissed

Counts XIX and X.

Plaintiff asserts the remaining claims: Count I: Unreasonable seizure under

the Fourth and Fourteenth Amendments against the defendant officers;[2] Count II:

---

[2]  The Third Amended Complaint defines "defendant officers" as defendants Lt. Col. Gerald
Leyshock; Lts. Timothy Sachs, Kimberly Allen, Scott Aubuchon, Scott Boyher, Daniel
Chitwood, Bill Kiphart, James Joyner; Christi Marks, Michael Mayo Donnell Moore, and Paul
Piatchek; Major Daniel Howard; Sergeants Randy Jemerson, Brian Rossomanno, Eric Bartlett,
Ronald Bergmann,  Michael Binz, James Buckeridge, Curtis Burgdorf, Joe Carretero, Anthony
Caruso, James Clark, Darnell Dandridge, Adam Duke, Kelly Fisher, Brandt Flowers, Samuel

Violations of free speech, press, association, and assembly under the First and Fourteenth Amendments against the defendant officers; Count III: Conspiracy to violate civil rights against the defendant officers and defendant Lt. Col. Lawrence O'Toole; Count IV: Failure to train, discipline, and supervise, and an unconstitutional custom of unconstitutional seizures and using excessive force against defendant City of St. Louis; Count V: Assault against the defendant officers; Count VI: False arrest against the defendant officers; Count VII: Abuse of process against the defendant officers and defendant Lt. Col. Lawrence O'Toole; Count VIII: Malicious prosecution against the defendant officers and defendant O'Toole; Count XI: Vicarious liability under the City of St. Louis Charter against defendants O'Toole and Charlene Deeken, Director of Public Safety for the City of St. Louis; Count XII: Excessive force under the Fourth and Fourteenth Amendments against the defendant officers; Count XIII: Failure to intervene in the use of excessive force against the defendant officers and defendant O'Toole; and Count XIV: Battery against defendant officers.

---

Gilman, Patrick Haug, John Jones, Matthew Karnowski, Robert Lammert, Joe Lankford, Robert Laschober, Tom Long, Kyle Mack, Mike Mandle, Michael Marks, Mark McMurry, James Murphy, Dennis Neal, Patricia Nijkamp, Kenneth Nizick, Donald Re, Bradley Roy, Daniel Schulte, Michael Scego, Timothy Schumann, Brian Seppi, Stephen Slama, Cliff Sommer, Timothy Turner, Scott Valentine, Charles Wall, Donnell Walters, Scott Weidler, Carolyn Wiener, and  Anthony Wozniak; Officers Lance Coats, Terrence Ruffin, Joseph Busso, and Detective Matthew Burle Plaintiff. Officers Coats, Ruffin, Busso, and Detective Burle.

Defendants seek to dismiss the Third Amended Complaint for several reasons including the failure to state a claim upon which relief can be granted. The individual defendants also assert they are entitled to qualified immunity on the counts asserting violations of § 1983 and to official immunity for the state law claims. For purposes of this Motion to Dismiss, the Court must accept as true the facts as alleged in the Third Amended Complaint. *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 958, 988 (8th Cir. 2010).

On September 15, 2017, the Circuit Court of the City of St. Louis, Hon. Timothy Wilson, issued its findings and verdict in *State of Missouri v. Stockley* acquitting former SLMPD officer Jason Stockley of first-degree murder of Anthony Lamar Smith.  The verdict prompted some members of the St. Louis community to engage in protests in St. Louis and the surrounding communities. The protests concerned not only the verdict but broader issues, including racism and the use of force by police officers.   Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields" and carrying chemical agents.[3]

---

[3] An extensive recitation of the general factual allegations of this and the other cases can be found in *Ortega v. City of St. Louis,* Case No. 18CV1576 DDN, 2021 WL 3286703 (E.D.Mo. August 2, 2021).

4

The specific allegations regarding Plaintiff in this case are: Plaintiff Dillan Newbold ("Newbold") is a medical student at Washington University.  He has lived in St. Louis since 2014 and has participated in several socio-political protests.  On September 17, 2017, Newbold went to downtown St. Louis with friends to protest the acquittal of Jason Stockley.  About 100 people were scattered around the area of Washington Avenue and Tucked Boulevard, though no large groups were formed.  Newbold walked around the block, ending up a block south of Washington and Tucker.  There, he saw police officers on bicycles herding pedestrians north toward Washington and Tucker and heard screaming from an alley.  He ran to the alley and saw a line of police officers in riot gear marching down the alley.  At no point did Newbold hear any police warnings or orders to disperse.

Newbold attempted to return to his car at Washington and Tucker, where a crowd was beginning to form.  Police were blocking all points of egress from the intersection of Washington and Tucker, with a line of bicycle officers to the east and full lines of riot police beating batons on the other three sides.  The police marched inward, pushing people into the northeast corner of the intersection.  Newbold asked officers "How can we leave?"  The only response he received were shouts of "Move back."

Newbold, fearing the SLMPD would use chemical agents on the protestors, put on a bandana and goggles.  As armored police approached the crowd, protestors began putting their arms up and sitting down.  Newbold, responding to an officer's order to "get down," sat down on the ground and began recording video on his phone. Officer Busso told Newbold to "Put your damn phone away and threatened to spray him with pepper spray if he did not stop filming the police.  Newbold stopped filming and moved into a fetal position.

Lieutenant Kiphart, without warning, doused Newbold and others with pepper spray from a fogger from a distance of no more than five feet. Officer Coats and Detective Burle reached down and pulled off Newbold's bandana and goggles, grabbed his waistband and dragged him about five feet into the street, scraping Newbold's hip and knee.  One of these officers sprayed Newbold in the face with pepper spray. Officer Busso was present at this spot with Coats and Burle, as were at least two other unidentified officers. Newbold's hands were tightly zip tied behind his back by one of these officers, so he could not wipe his face.  Newbold shouted that he could not breathe.  An officer shouted, "You can't breathe? That's what idiots say!"  Another officer allegedly stood over Newbold and mocked him, saying "Are you proud now?  Are you going to tell your wife about this?  You better not.  I'm so glad I'm in St. Louis and get to do s**t like this!"

Two unidentified officers picked Newbold up by the wrists, causing intense pain in his wrists and shoulder joints from the zip ties.  Officer Ruffin took custody of Newbold and walked him toward the transport vehicles.  He was still blinded by the pepper spray. He asked Ruffin to loosen his zip ties and yelled from pain. Ruffin ignored his request.  He asked at least six police officers at the scene and at the Justice Center to loosen the zip ties.  He said he was concerned about nerve damage. His requests were ignored. Officers placed Newbold in the back of a truck with about eighteen other arrestees.  On the ride to the Justice Center, the van driver slammed on the brakes, causing the arrestees to slam into one another. After about 15 minutes, Newbold lost all sensation in his hands.  When Newbold was put in a holding cell, his hands were purple.  He tried to get officers' attention to loosen the zip ties.  Ten minutes later, an officer removed the zip ties.  This was about an hour and fifteen minutes after Newbold's arrest.

Newbold was detained for over fifteen hours.  Throughout the night and the next morning, he was repeatedly moved from one cell to another.  Only the first cell he was in had a working phone, and most of the night he was not allowed to use a phone.  Most cells contained around 30 other arrestees. The pepper spray sprayed on Newbold's face, neck and hands continued to cause him pain throughout the night.  He was concerned about residual pepper spray caught below his contact lenses but did not remove them because his hands were still coated in

dry mace. Newbold experienced continuing pain and hypersensitivity to heat for the next two days. Some segments of his right hand had no sensation.

Immediately after his release, Newbold went to the student health office. There, he was directed to the emergency room.  He was diagnosed with neuralgia (nerve pain) and neuropraxia (loss of sensation due to nerve injury.)  He experienced hypersensitivity to heat and pain, as well as no sensation in some parts of his right hand for two days after his arrest.  Newbold did not recover full sensation in his right hand for nearly two months.

The Third Amended Complaint also contains allegations that none of the individuals inside the crowd of protestors (the "kettle") on September 17, 2017 were acting violently and aggressively, yet they were kicked, beaten, dragged, and sprayed with chemical agents.  Further, during and after the arrests of protestors, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!"

In addition to the Defendant City of St. Louis, Missouri (the "City"), the Third Amended Complaint names several SLMPD officers as defendants, including 53 supervisory officers (collectively, "Supervisory Defendants"), the arresting officers.  Lieutenant Colonel Gerald Leyshock was the incident commander during the events of September 17, 2017.  Leyshock allegedly

approved the plan to prevent civilians from leaving the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present. Lieutenant Timothy Sachs allegedly developed the plan described above, deployed the tactical units accordingly, and ordered the use of chemical agents. On the night of the incident, Major Daniel Howard was commander of the South Patrol. Howard was on the ground supervising SLMPD officers during the events of September 17, 2017. Defendant Howard also assisted Leyshock with planning the kettling event. Lieutenant Scott Boyher allegedly directed officers under his command to block protestors in and directed the officers to use force against and to arrest protestors. Sergeant Matthew Karnowski allegedly declared the protests an "unlawful assembly," which SLMPD used as a predicate to the arrests and use of the chemical agents. Karnowski also directed the officers under his command to use force against and to arrest protestors. Sergeant Randy Jemerson is a supervisor with the SLMPD's Civil Disobedience Team and directed people to the intersection of Washington and Tucker pursuant to the plan described above. Sergeant Brian Rossomanno also allegedly directed people to the intersection.

**Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss all or part of a complaint for its failure to state a claim upon which relief can be granted. To overcome a motion to dismiss under Rule 12(b)(6) a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." *Id*. at 555. Such a complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation. *Twombly*, 550 U.S. at 555. In reviewing the pleadings under this standard, the Court must accept Plaintiff's factual allegations as true and draw all inferences in Plaintiff's favor, but the Court is not required to accept the legal conclusions Plaintiff draws from the facts alleged. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). The Court additionally "is not required to divine the litigant's intent and create claims that are not clearly raised, . . . and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc*., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (citations omitted).

## Discussion

Defendants claim they are entitled to qualified immunity on Plaintiff's §
1983 claims under the First and Fourth Amendments, that the § 1983 civil
conspiracy claim is barred by the intracorporate conspiracy doctrine, that the state
law claims are barred by official immunity or are insufficient as a matter of
law, and that the Monell claim against the City fails to allege an unconstitutional
custom. Defendants also ask the Court to decline supplemental jurisdiction over
Plaintiff's claim under the City's Charter.

Before addressing the parties' substantive arguments, the Court must first
address defendants' request that the Court consider exhibits attached to Plaintiff's
prior complaints.

## Exhibits Attached to Earlier Complaints

Unlike the prior complaints, Plaintiff did not attach any exhibit to this
complaint. Defendants assert the Court should still consider, for the purposes of
this motion, certain exhibits attached to the prior complaints, by finding them
necessarily embraced by the Third Amended Complaint, or by taking
judicial notice of them. The exhibits referenced by defendants are the exhibits
drawn from *Ahmad*. These exhibits are not properly before the Court for
consideration. "When a plaintiff files an amended complaint, the original
complaint is superseded and has no legal effect." *Thomas v. United Steelworkers*

*Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014); see also *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[W]hen [plaintiff] filed the second amended complaint, the first amended complaint (and its attached exhibits) became a legal nullity.").

Plaintiff abandoned the exhibits attached to the earlier complaints by not including them in the current complaint. While a court may consider documents necessarily embraced by a complaint, but not attached, it may only do so for "documents whose contents are alleged in a complaint and whose authenticity no party questions." See *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018). Nor will the Court take judicial notice of the content of the exhibits. Federal Rule of Evidence 201(b) allows a court to take judicial notice of "a fact that is not subject to reasonable dispute" either because it is generally known within the Court's jurisdiction or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The facts of which Defendants ask the Court to take judicial notice are disputed by Plaintiff. While the Court could take judicial notice that a certain person testified at a court hearing, it is inappropriate for the Court to take judicial notice of the contents of a person's testimony at a contested hearing. The Court will not consider defendants' requested exhibits in deciding this motion to dismiss.

**Qualified Immunity**

Defendants assert they are entitled to qualified immunity on plaintiff's §
1983 claims under the First and Fourth Amendments. Qualified immunity protects
governmental officials from civil liability if "their conduct does not violate clearly
established statutory or constitutional rights of which a reasonable person would
have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Officials are entitled to qualified immunity unless a plaintiff can show "(1) a
deprivation of a constitutional right, and (2) that the right was clearly established at
the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th
Cir. 2021). A court may address either inquiry first. *Id*.
"To be clearly established, the 'contours of the right must be sufficiently clear that
a reasonable official would [have understood] that what he is doing violates that
right." *Quraishi v. St. Charles Cty., Mo*., 986 F.3d 831, 835 (8th Cir. 2021)
(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The law, at the time of
the alleged violation, must give officials "'fair warning' their conduct was
unlawful." *Id*. (quoting *Sisney v. Reisch*, 674 F.3d 839, 845 (8th Cir. 2012)).
Although there may be the "rare obvious case" where it is clear the officer's
conduct is unlawful without precedent addressing a similar circumstance, most
cases will require precedent, controlling authority, or a robust consensus of cases
of persuasive authority finding the conduct at issue is unconstitutional. *Id*.

**Plaintiff's Arrest**

In Count I, Plaintiff alleges the defendant officers arrested him without probable cause in violation of the Fourth Amendment. He also alleges the defendant officers' use of kettling without warning was an unreasonable seizure. Plaintiff alleges the defendant officers violated his right of freedom of movement by use of kettling and arrested him. The defendant officers argue they had probable cause to arrest plaintiff therefore they did not violate his constitutional rights. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)). "Probable cause exists when the totality of facts known at the time of the arrest would justify a reasonable person in believing that the individual has committed or is committing an offense." *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017). "Arguable probable cause exists even when an officer mistakenly arrests a suspect believing the arrest is based in probable cause if the mistake is objectively reasonable." *Id*. (internal quotations omitted). Thus, for his claims of unlawful seizure and retaliatory arrest, plaintiff must show the defendant officers did not have probable cause to arrest him. While probable cause for an arrest is generally focused on the one arrestee's actions, law enforcement officers may arrest a large group of individuals if the officers have probable cause

that the group is committing a crime and acting as a unit. See *Bernini v. City of St. Paul*, 665 F.3d 997 (8th Cir. 2012). In Bernini, during protests in St. Paul, Minnesota, there were various reports of property damage around the City. *Id*. at 1001. Consequently, after the protest permits expired, the police commander ordered that no one be allowed to enter the downtown area. *Id*. A large group attempted to move towards downtown and officers blocked them. *Id*. The officers ordered the group to back up and deployed stinger blast balls against them. *Id*. Officers reported numerous objects were thrown at them. *Id*. The crowd grew in size and started chanting in unison and yelling profanities. *Id*. The officers continued to use non-lethal munitions to keep the crowd moving away from downtown. *Id*. at 1002. Officers decided to encircle the crowd in a park. *Id*. They announced everyone was under arrest and for everyone to sit down with their hands on their heads. *Id*. The officers then attempted to determine who had been at the initial altercation and who were innocent bystanders, eventually releasing approximately 200 people and arresting around 160 others. *Id*. The Eighth Circuit held that the officers had probable cause to conduct the mass arrest because the individuals arrested acted as a unit in committing a crime. *Id*. at 1003-04. The Eighth Circuit found the officers could have reasonably concluded that the group had committed a crime and were acting as a unit because the individuals donned gas masks and other facial coverings, flags waved from within the crowd, several

people shouted profanities and taunted the officers, members shielded themselves behind two large signs, and members chanted in unison. *Id*. at 1003-04. The Eighth Circuit also noted that the officers did not arrest everyone but attempted to discern who had been a part of the initial altercation where the unlawful activity had occurred and who had not, releasing approximately 200 people. *Id*. at 1005.

In this case, the defendant officers assert they had probable cause to conduct a mass arrest of the group for peace disturbance, unlawful assembly, or refusal to disperse. As it relates to this case, in Missouri, a person commits the offense of peace disturbance if he: (2) Is in a public place or on private property of another without consent and purposely causes inconvenience to another person or persons by unreasonably and physically obstructing: (a) Vehicular or pedestrian traffic; or (b) The free ingress or egress to or from a public or private place. Mo. Rev. Stat. § 574.010 (eff. Jan. 1, 2017). A person commits the offense of unlawful assembly if he "knowingly assembles with six or more other persons and agrees with such persons to violate any of the criminal laws of this state or of the United States with force or violence." Mo. Rev. Stat. § 574.040 (eff. Jan. 1, 2017). A person commits the offense of refusal to disperse "if, being present at the scene of an unlawful assembly, or at the scene of a riot, he or she knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot." Mo. Rev. Stat. § 574.060 (eff. Jan. 1, 2017). Two other

cases from this Court have addressed the mass arrest that occurred on September

17. The defendant officers ask the Court to follow the holding in *Burbridge v. City*

*of St. Louis*, Missouri, 430 F. Supp. 3d 595 (E.D. Mo. 2019), which found that

officers had probable cause to conduct the mass arrest. In *Burbridge*, Judge Clark

found the officers had grounds to believe the plaintiffs were part of a unit observed

violating the law. 430 F. Supp. 3d at 610. He found that officers declared the area

an unlawful assembly, issued multiple dispersal orders to the crowd, and then

arrested those who refused to follow the lawful commands of the officers. *Id*. The

procedural posture of *Burbridge* differs significantly from this case. Judge Clark

decided a motion for summary judgment with proffered evidence. *Id*. at 604-08. In

this case, the Court must accept as true, and may only consider, Plaintiff's

allegations in his Third Amended Complaint. In *Burbridge*, the undisputed facts

included individuals throwing rocks and other objects at officers, and the officers

giving dispersal orders through a public address system. *Id*. at 605. The Third

Amended Complaint does not include any such allegations. The factual allegations

in this case more closely align with those in *Baude v. City of St. Louis*, 476 F.

Supp. 3d 900 (E.D. Mo. 2020). The events in *Baude* concern the same night in

question, September 17, and the same alleged kettling event. *Id*. at 907.

In this case, there are no allegations the crowd acted as a unit. There are no

allegations that the group chanted in unison, moved as a group, carried signs

together, or in any way acted as if they were a unit. While some vandalism did occur hours before the mass arrest, officers ordered that group to disperse and there are no allegations that they did not, that they continued to vandalize property, or that they moved as a group towards Tucker and Washington.

It is not reasonable to assume the group of individuals arrested in mass are the same group that engaged in the earlier vandalism when the area includes many businesses, including shops and restaurants, as well as residential buildings and the mass arrest occurred two to three hours after the vandalism occurred.

Nor are there any allegations to support that those in the group arrested committed any crimes. Plaintiff alleges those arrested stood still, with their hands up. No one acted violently or aggressively and many asked to be allowed to leave, peacefully. The scene was relatively calm before the officers began using chemical agents and deploying force against the group. The allegations show no credible threat of force or violence to officers or property, or that any individuals were disobeying police orders. Plaintiff's allegations do not establish that the officers in this case could reasonably have concluded that the group was acting as a unit or violating the law. Under these alleged facts, the defendant officers could be found to have violated the Fourth Amendment by arresting plaintiff, and others, without probable cause.

The defendant officers also argue they are entitled to qualified immunity because it was not clearly established that they could not conduct a mass arrest of a crowd violating traffic laws and unlawfully assembling. In 2012, *Bernini* clearly established that to conduct a mass arrest there must be probable cause that the group is committing a crime and acting as a unit. 665 F.3d at 1003-04. The facts in *Bernini* are not dissimilar to the general situation presented in this case. However, unlike in *Bernini*, where the crowd chanted together, carried signs together, and waved flags together, there are no factual allegations in this case to support the defendant officers' contention the group was acting as a unit, or that officers could perceive them to be doing so. Nor is it alleged that any of the officers in this case attempted to determine which individuals were part of a unit acting unlawfully and which were swept up incidentally, as the officers did in *Bernini*.

Determining whether the force used to effectuate a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396, (1989). The reasonableness inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Brown v. City of Golden*

*Valley*, 574 F.3d 491 (2009). Circumstances relevant to the reasonableness of the officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Id*.at 497. *Poole v. City of Lincoln*, No. 4:21CV3030, 2021 WL 2935899, at *8 (D. Neb. July 13, 2021)(finding plaintiff's allegations of Fourth Amendment right terminating her freedom of movement stated a cause of action sufficient to avoid qualified immunity challenge.) Because Plaintiff's allegations did not indicate Defendant officers had probable cause to arrest him, and it was clearly established at the time of the mass arrest on September 17, 2017, that to conduct a mass arrest, officers must have probable cause the group is committing a crime and acting as a unit, they are not entitled to qualified immunity.

Defendants also argue that the generic allegations against "supervisory officers" are not sufficient to preclude qualified immunity for the defendants named in Paragraph 17.  There are no specific allegations with regard to certain of these "supervisory defendants" other than stating who the parties are in the action. Those allegations alone are not enough to establish a defendant's liability. However, the remainder of the complaint includes specific allegations that individual defendants participated in an unlawful arrest of plaintiff. These allegations include that Karnowski, Aubuchon, Kiphart, Long, and Coats actively

engaged in the use of excessive force. Burle allegedly deployed a fogger blast.

Jemerson, Rossomanno directed officers' unlawful actions. Sachs devised the plan

of the mass arrest, Leyshock approved the plan. These are sufficient,

specific allegations to establish these defendants participated in plaintiff's

allegations in Counts I, II, XII, and XIII. Lt. Col. O'Toole, named in paragraph 10,

is not named as a defendant in Count I or II of the Third Amended Complaint.

Counts I and II are against "Defendant Officers." The complaint defines

"Defendant Officers" as the individuals listed in paragraphs 12-20. Those

paragraphs do not include defendant Lt. Col. O'Toole. Finally, defendants argue

Boyher, Jemerson, Karnowski and Rossomanno, acted on the orders of their

superiors, which is entirely reasonable, so they are entitled to qualified immunity.

The Eighth Circuit has held that it can be objectively reasonable for one officer to

rely on an assurance of probable cause from another officer. See *Bell v. Neukirch*,

979 F.3d 594, 609 (8th Cir. 2020); *Ehlers v. City of Rapid City*, 846 F.3d 1002,

1010 (8th Cir. 2017). However, that reliance must be reasonable. *Bell*, 979 F.3d at

609; *Ehlers*, 846 F.3d at 1010. Based on the allegations in the complaint, it would

not be reasonable for these officers to rely on the assurance of their superiors that

the crowd was not disbursing. The allegations indicate the officers saw the group

acting peacefully, obeying orders, and not committing a crime. Furthermore, an

individual officer is not entitled to qualified immunity just because his superior

told him to engage in unconstitutional conduct. See *Quraishi v. St. Charles Cty.*, Mo., 986 F.3d 831, 837 (8th Cir. 2021) ("Anderson is not entitled to qualified immunity even if his sergeant told him to deploy the tear-gas."). There is no legal support for the proposition that "a government official is immune if a superior instructs him to engage in unconstitutional conduct." *Id*. The defendants are not entitled to qualified immunity simply because they followed orders. The Court denies the motion to dismiss on this ground.

**Excessive Force**

In Count XII, Plaintiff asserts a claim under § 1983 for a violation of his right to be free from excessive force under the Fourth Amendment. He alleges the defendant officers used excessive force against him when they pepper sprayed him multiple times, dragging him, yanking him by his arms, kettled him, and zip cuffed him deliberately to cause pain.

Defendants argue that plaintiff does not allege the supervisory officers knew other officers were using excessive force, and if they did know, it was reasonable for them to believe it was necessary. They also argue it was not clearly established that the use of pepper spray, tight handcuffing, arm twisting, or the brief dragging of an arrestee constitutes anything more than *de minimis* use of force. Thus, they argue they are entitled to qualified immunity. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the

22

test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

The Court considers the claim from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. "Circumstances relevant to the reasonableness of the officer's conduct include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989)(internal citations and quotations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-97. "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499.

Plaintiff alleges he used his phone to film the surrounding activities for approximately ten seconds. Busso told hm, "Put your damn phone away." Busso

threatened Plaintiff with pepper spray if he did not stop filming the police. Kiphart

doused him and others with pepper spray from a fogger (a large canister of

capsaicin spray) from a distance of no more than five feet. Less than a minute later,

Burle doused him and others again, also with pepper spray from a fogger (a large

canister of capsaicin spray) from a distance of no more than five feet. Following

this, Coats and Burle reached down; pulled off Plaintiff's bandana and goggles;

grabbed his waistband; and dragged him approximately five feet out into the street,

scraping his hip and knee. One of these officers then pepper sprayed Plaintiff again

directly in the face, from a range of approximately two feet. One of these officers

tightly zip tied Plaintiff's hands behind his back.  Plaintiff also asked the officers to

loosen his zip ties because they were causing pain. The assembled officers did not

provide medical assistance or loosen zip ties. Instead, one of the officers

immediately shouted, "You can't breathe? That's what idiots

say!" Another told Plaintiff he deserved the pain he was in. One officer stood over

him and mocked him, saying, "Are you proud now? Are you going to tell your

wife about this? You better not. I'm so glad I'm in St. Louis and get to do shit like

this!" Ruffin took custody of Plaintiff and walked him towards the

transport vehicles. Plaintiff asked Ruffin to loosen his zip ties and yelled from the

pain. Ruffin ignored his request.

Since 2011, the Eighth Circuit has made it clear that a *de minimis* injury does not preclude a Fourth Amendment violation. *Chambers v. Pennycock*, 641 F.3d 898, 906 (8th Cir. 2011); *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019) ("While a *de minimis* injury does not preclude a claim of excessive force. . ."). The appropriate inquiry is the nature of the force applied, not the degree of injury inflicted. *Chambers*, 641 F.3d at 906. Defendants' argument is unavailing. Viewing the facts in the light most favorable to Plaintiff, the use of pepper spray against him was not objectively reasonable. See *Quraishi*, 986 F.3d at 840 (8th Cir. 2021) (The use of pepper spray to arrest an unarmed, compliant suspect can be excessive force). The alleged crimes officers were detaining him for were non-violent misdemeanors. There is no indication he was fleeing or resisting arrest, that he posed an immediate threat to the officers' safety, or that he disobeyed any officer's commands. Similarly, under Plaintiff's allegations it was not objectively reasonable for Coats and Burle to drag Plaintiff See *Blazek v. City of Iowa, City*, 761 F.3d 920, 925 (8th Cir. 2014) ("A gratuitous and completely unnecessary act of violence is unreasonable and violates the Fourth Amendment."). Plaintiff alleges that the use of force caused him lasting injury. The kettling, forcing Plaintiff along with other individuals into a single area and not allowing them to leave, did not involve an objectively unreasonable use of force against plaintiff.

Based on the facts alleged in the Third Amended Complaint, officers did not use any force in the act of kettling Plaintiff. The alleged use of force came after he had been trapped in the intersection and was being placed under arrest. Therefore, the defendant officers are entitled to qualified immunity on Count 12 as it relates solely to the act of kettling plaintiff. Plaintiff has also not established that officers applying zip ties too tightly violates the Constitution. The Eighth Circuit previously found that an officer who applies handcuffs so tightly they break a suspect's wrist uses excessive force in violation of the Fourth Amendment. *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002). It has not been clearly established that anything less than this constitutes excessive force. Here, Plaintiff alleges the zip ties were causing him intense pain and he informed the officers. He asserts the zip ties caused him neuralgia and neuropraxia and that he experienced pain and hypersensitivity to heat for approximately two and a half days after his arrest. These allegations do not rise to the level of force established in *Kukla*, where the suspect's wrist was broken from the handcuffs. Because it was not clearly established that applying zip ties too tightly violates the Fourth Amendment, the defendant officers are entitled to qualified immunity on this portion of plaintiff's claim.

Defendants also argue it is not clearly established that the other alleged uses of force were unconstitutional. In May 2017, the Eighth Circuit established that it is

unreasonable to use pepper spray against a non-resisting, non-fleeing individual, suspected of a non-violent misdemeanor. *Tatum v. Robinson*, 858 F.3d 544, 548-550 (8th Cir. 2017). In *Blazek*, the Eighth Circuit established it was excessive force to jerk an individual up by his arms with sufficient force to cause an injury to the individual's shoulder when the individual was not resisting arrest, posed no threat to officers, was not suspected of a serious offense, and was handcuffed and under control. 761 F.3d at 925. Plaintiff was not resisting arrest. At the time the defendant officers used force against Plaintiff by pepper spraying him and dragging him causing injury to his knee it was clearly established their actions would violate the Fourth Amendment. The defendant officers are not entitled to qualified immunity, on the motion to dismiss the complaint, on Count XII as it relates to plaintiff being pepper sprayed and dragged. Defendants argue the supervisory defendants who did not personally pepper spray or drag Plaintiff cannot be liable for the alleged uses of excessive force. Officers who do not directly use excessive force but fail to intervene to prevent the use of excessive force by another officer, may be liable for violating the Fourth Amendment. *Nance v. Sammis*, 586 F.3d 604, 611-12 (8th Cir. 2009). As Judges Sippel and Noce found in *Baude* and *Ortega*, respectively, at this stage of litigation, Plaintiff only needs to allege facts sufficient to state a plausible claim for liability. *Baude* 476 F. Supp. 3d at 914; *Ortega*, 18CV1576 DDN, 2021 WL 3286703 at * 12. Plaintiff

alleges the supervisory defendants were present at the mass arrest, witnessed

officers using excessive force, and failed to intervene. He also alleges the

supervisory defendants issued orders allowing the use of force against a non-

violent, largely compliant crowd. These allegations are sufficient to state a claim

against the supervisory defendants. See *Wagner v. Jones*, 664 F.3d 259,

275 (8th Cir. 2011) ("The supervisor must know about the conduct and facilitate it,

approve it, condone it, or turn a blind eye for fear of what [he or she] might see.").

In *Nance*, the Eighth Circuit held that, as of June 2007, it was clearly established

that "an officer who fails to intervene to prevent the unconstitutional use of

excessive force by another officer may be held liable for violating the Fourth

Amendment." *Id*. The supervisory defendants are not entitled to qualified

immunity on Count XII.

**Conspiracy**

In Count III, Plaintiff asserts a § 1983 civil conspiracy claim against the

defendant officers and Lt. Col. O'Toole. Defendants ask the Court to apply the

intracorporate conspiracy doctrine  or, in the alternative, find defendants are

entitled to qualified immunity because it is not clearly established that the

intracorporate conspiracy doctrine does not apply. The intracorporate

conspiracy doctrine provides that "a local government entity cannot conspire with

itself through its agents acting within the scope of their employment." *Kelley v.*

*City of Omaha*, Neb., 813 F.3d 1070, 1078 (8th Cir. 2016) (quoting *L.L. Nelson Enters., Inc. v. City of St. Louis, Mo*., 673 F.3d 799, 812 (8th Cir. 2012)). The Eighth Circuit has only applied the doctrine to 42 U.S.C. § 1985 claims; it has not yet determined if it applies to § 1983 claims. This Court has declined to apply the doctrine in this case. See e.g., *Newbold v. City of St. Louis*, No.4:18 CV 1572 HEA, 2019 WL 3220405, at *6 (E.D. Mo. Jul. 16, 2019) (collecting cases). More recently, Judge Noce declined to apply it at the pleading stage in the absence of direction from the Eighth Circuit. *Ortega*, 18CV1576 DDN, 2021 WL 3286703

The Court again declines to apply the doctrine for the same reasons. Therefore, defendants are not entitled to qualified immunity on plaintiff's § 1983 claim by virtue of the intracorporate conspiracy doctrine.

## Monell[4] Claim

In Count IV, Plaintiff asserts a claim against the City under § 1983 for the City's unconstitutional customs and alleged failures to train, discipline, and supervise officers on the use of force and kettling. Specifically, Plaintiff alleges the SLMPD's policies, practices, or customs that caused constitutional harm to him include: (1) officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested; (2) the SLMPD's

---

[4] Under color of an official policy, a government entity is liable where it "'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 692 (1978).

refusal to provide medical care to citizens arrested including those suffering from pepper spray, and its refusal to loosen or release dangerously tight zip cuffs and treat resulting injuries; (3) kettling without warning on citizens who are not resisting arrest and are exercising their First Amendment rights; (4) use of vague and contradictory dispersal orders without giving an opportunity to comply; (5) arbitrary declaration of unlawful assemblies in the absence of any threat of force or violent activity; and (6) violation of the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause. (Doc. 106, pgs. 42-45).

"Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (internal quotations omitted). The City argues plaintiff fails to establish *Monell* liability under any of these theories.

**Custom or Practice**

To establish liability for a municipality's alleged custom, a plaintiff must allege: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [municipality's] employees; (2) deliberate indifference to or tacit authorization of such conduct by the [municipality's]

policymaking officials after notice to the officials of that misconduct;" and (3) the custom was the moving force behind the constitutional violation. *Ware v. Jackson Cty.*, *Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). As other judges of this Court have held with respect to similar *Monell* allegations in related cases, Plaintiff's Third Amended Complaint plausibly alleges that SLMPD customs on the use of excessive force against protestors, the use of vague and contradictory dispersal orders, the arbitrary declaration of unlawful assemblies, and the unreasonable seizures and arrests of protestors without probable cause were the moving force behind the constitutional violation he suffered. See *Ortega*, 2021 WL 3286703, at * 16; *Street*, 2021 WL 677909 at *12; *Baude v. City of St. Louis*, No. 4:18 CV 1564,  2019 WL 4750254 at *5 (E.D. Mo. Sept. 30, 2019); *Rose v. City of St. Louis, Mo.*, No. 4:18 CV 1568,  2019 WL 4602829 at *5 (E.D. Mo. Sept. 23, 2019); *Thomas v. City of St. Louis, Mo.*, No. 4:18 CV 1566, 2019 WL 3037200 at *6 (E.D. Mo. July 11, 2019); *Laird v. City of St. Louis, Mo.*, No. 4:18 CV 1567, 2019 WL 2647273 at *5 (E.D. Mo. June 27, 2019); *Laney v. City of St. Louis*, *Mo.*, No. 4:18 CV 1575, 2019 WL 2423308 at *4-5 (E.D. Mo. June 10, 2019); *Aldridge v. City of St. Louis, Mo.*, No. 4:18 CV 1677,  2019 WL 1695982 at *10-11 (E.D. Mo. Apr. 17, 2019).

Plaintiff alleges a pattern of using chemical agents without warning against peaceful protestors complaining of police actions, including incidents in October

and November 2014, in May and August 2015, and in July 2017; as well as additional incidents that occurred after the Stockley verdict on September 15, 2017. Plaintiff further alleges the City had notice of the past unconstitutional conduct because it entered into a settlement agreement in March 2015 in *Templeton, et al. v. Dotson*, et al., No. 4:14 CV 2019 CEJ (E.D. Mo.), in which it agreed not to use chemical agents to disperse groups of individuals engaged in non-criminal activity without first issuing clear and unambiguous warnings that such chemical agents would be used and without ensuring that there is a means of safe egress from the area (among other protections). However, after the consent decree was entered, SLMPD officers continued to use chemical agents against non-violent protestors without adequate warning or opportunity to comply. These factual allegations are sufficient to support the existence of an unconstitutional policy or custom that plausibly caused the constitutional violations alleged here.

Plaintiff does not, however, sufficiently allege a pattern of the SLMPD's failure to provide medical care to protestors, the use of too tight of zip ties and the refusal to loosen those zip ties, or SLMPD's kettling of protestors without warning. For each of these, plaintiff only alleges the events that occurred on September 17. He does not allege any prior incidents to support such customs. Thus, he has not established a pattern of unconstitutional misconduct as it concerns those alleged

customs. The Court grants the motion to dismiss as to those alleged customs only.

**Failure to Train or Supervise**

To allege a § 1983 claim against the City for a failure to train or supervise, plaintiff must plead facts sufficient to show the City's training and supervision practices were inadequate, the City was deliberately indifferent to the rights of others in adopting these practices, the City's failure to train and supervise was the result of deliberate and conscious choices, and the alleged deficiencies caused plaintiff's constitutional deprivation. *Ulrich v. Pope Cty*., 715 F.3d 1054, 1061 (8th Cir. 2013); *Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201, 1216 (8th Cir. 2013). Although several judges in this Court have found allegations of the City's failure to train or supervise to be deficient, the allegations in this case align more closely with Judge Noce and Perry's decisions in *Ortega* and *Street*. Plaintiff makes the same allegations in his Third Amended Complaint as the Plaintiffs in *Ortega*  and *Street*. Therefore, the undersigned agrees with Judges Noce and Perry that from these allegations, a plausible inference can be drawn that the City failed to train or supervise its officers. The Court denies the motion to dismiss as to plaintiff's claims the City failed to train or supervise its officers.

**State Law Claims**

Defendants assert all of Plaintiff's state law claims either are barred by official immunity or fail as a matter of law.

**Official Immunity**

"Under Missouri law, public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015). Official immunity only protects officials who act within the course of their official duties and without malice. *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id.* at 190, n. 7. "[A] police officer's decision to use force in the performance of his duties is discretionary." *Davis*, 794 F.3d at 1013. The acts alleged in plaintiff's Third Amended Complaint are discretionary and thus, defendants may be entitled to official immunity. Plaintiff's allegations are sufficient to allege defendants did not act without malice. The allegedly unnecessary use of force against non-resisting individuals, such as plaintiff, the inflammatory and disparaging remarks made by SLMPD officers before, during, and after the incident, and the comparison between SLMPD's response to the Stockley protests and other protests not related to police misconduct may reasonably support a finding of malice or bad faith. See *Ortega*,

34

2021 WL 3286703, at * 17; *Street*, 2021 WL 677909 at *10. Official immunity is not appropriate at this stage of the litigation.

**False Arrest**

Defendants assert Plaintiff's false arrest claim should be dismissed for the same reasons they should be granted qualified immunity for the § 1983 unlawful arrest claim, citing *Edwards v. McNeill*, 894 S.W.2d 678 (Mo. Ct. App. 1995) in support. *Edwards* provides that justification is a complete defense to a cause of action for false arrest. *Id*. at 683. Because plaintiff's allegations do not establish the defendants acted with probable cause to arrest plaintiff, the Court denies the motion to dismiss the claim for false arrest.

**Abuse of Process, Malicious Prosecution**

In Counts VII and VIII, Plaintiff asserts claims of abuse of process and malicious prosecution against the defendant officers and Lt. Col. O'Toole. To assert a claim of malicious prosecution, a plaintiff must establish: "(1) the commencement of a prosecution against the plaintiff, (2) the instigation of that prosecution by the defendant, (3) the termination of the proceeding in favor of the plaintiff, (4) the want of probable cause for the prosecution, (5) that defendant's conduct was actuated by malice, and (6) damage to the plaintiff." *Baker v. St. Joe Minerals Corp*., 744 S.W.2d 887, 888 (Mo. Ct. App. 1988). Instigation requires affirmative action either through advice, encouragement,

35

pressure, or something similar. *Id*. at 889. "The providing of honest information" does not constitute instigation, although supplying false information may. *Id*. To establish a claim for abuse of process, a plaintiff must show: "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 277 (Mo. 2019) (quoting *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. 1990)). Both malicious prosecution and abuse of process require a legal process be initiated. *Id*.; *Baker*, 744 S.W.2d at 888. The Third Amended Complaint contains only two factual allegations related to either of these claims. One is that all of the arrestees were given summonses showing they had been charged with "failure to disperse" and instructing them to appear in St. Louis Municipal Court on October 18, 2017. (Doc. 106, at ¶ 114). The second is that on October 13, 2017, the City Counselor's office sent another letter saying it is reviewing the evidence in order to decide whether or not to file charges and the arrestee has no obligation to appear in Municipal Court on October 18, 2017. (Doc. 104, at ¶ 122). There are no allegations that Plaintiff was charged with a crime, nor are there any allegations about who instigated the issuance of the initial summons. While Plaintiff alleges Defendants arrested him, he does not

allege those same officers were involved in issuing the summons. Consequently, he does not allege sufficient facts to state a claim for abuse of process or for malicious prosecution. Counts VII and VIII will be dismissed. See *Ortega*, 2021 WL 3286703, at * 18 (dismissing claims of malicious prosecution and abuse of process because plaintiffs did not allege any facts showing any defendant had a role in the initiation of any proceedings against the plaintiffs); *Street*, 2021 WL 677909 at *10 (same).

**Vicarious Liability under the City's Charter**

In Count XI, Plaintiff asserts a novel theory of liability. He alleges Lt. Col. O'Toole and Charlene Deeken are vicariously liable under the City's Charter. According to plaintiff, Article VIII, Section 5 of the Charter states, "[e]ach head of a department, officer or division shall be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself." (Doc. 106, at ¶ 277). Plaintiff alleges Lt. Col. O'Toole and Deeken were officers and employees of the Chief of Police and were acting in the scope of their employment when they committed the acts alleged in the Third Amended Complaint. *Id*. at ¶¶ 278, 279. In *Ortega* and *Street*, Judges Noce and Perry agreed with Defendants and declined supplemental jurisdiction.

Under 28 U.S.C. § 1367(c)(1), the Court may decline supplemental jurisdiction over a claim that raises a novel or complex issue of State law. The

undersigned agrees with Judges Noce and Perry that supplemental jurisdiction

should be declined with regard to this novel and complex issue of State law.

## Conclusion

Based upon the foregoing, Defendants' motion will be denied in part and

granted in part.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc.

111], is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the motion is granted as to:

the Count IV claim against the defendant City of St. Louis for a pattern or
practice of the SLMPD's failure to provide medical care to protestors, the
use of too tight zip ties and the refusal to loosen those zip ties, and
SLMPD's kettling of protestors without warning;

the Count VII claim of abuse of process;

the Count VIII claim of malicious prosecution;

the Count XI claim of vicarious liability under the Charter of the City of St.
Louis;

the Count XII claim against the defendant officers as it relates to the alleged
act of kettling plaintiff and to the alleged act of applying the zip ties on him
too tightly.

**IT IS FURTHER ORDERED** that the Motion is denied in all other

respects.

Dated this 7th day of September, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE